STATE USE OF MAYOR AND CITY COUNCIL OF BALTIMORE ET. AL. *vs.* BOYD—*June,* 1830.

The bond required from Executors by the act of 1798, ch. 101. Sub. ch. 14, sect. 6, is a testamentary bond within the meaning of the act of limitations, of 1729, ch. 24, sect. 21, and an action upon such bond not commenced within 12 years after the passing the same, will be barred by pleading the act of 1729 aforesaid.

Any bond required by law to be given by an Executor or Administrator, by reason of the assumed representative character of Executor or Administrator, and to secure the payment of debts and legacies, or the faithful administration of assets, is a testamentary or administration bond, as the case may be.

Statutes are sometimes extended to cases not within the letter; and cases are sometimes excluded from the operation of statutes though within the letter; on the principle that what is within the intention of the maker of a statute,

is within the statute, though not within the letter, and that what is within the letter of the statute, and not within the intent of the maker, is excluded, it being an acknowledged rule in their construction, that the intention of the maker ought to be regarded.

APPEAL from *Baltimore* County Court.

This was an action of *debt*, instituted by the appellants, on the 26th of March, 1825, against the appellee, *James P. Boyd*, as one of the sureties in the testamentary bond of *Margaret McMechin* and *William McMechin*, Executors of *David McMechin*, bearing date July 21st, 1810. The following is the condition of the bond: "That if the above bound *Margaret McMechin* and *William McMechin*, Executors of *David McMechin*, late of *Baltimore* County, deceased, shall pay all just debts of, and claims against the deceased, and all damages which shall be recovered against them, as Executors, and also all legacies bequeathed by the will, then the above obligation shall be void; if otherwise to be in full force and virtue in law."

The defendant pleaded the act of limitations and several other pleas; but in virtue of an agreement by the counsel for the parties, a *pro forma* judgment was entered in the County Court for the defendant, and an appeal taken by the plaintiff to the Court of Appeals, "where the only questions to be decided, are, whether any of the acts of limitation be a bar to the plaintiff's claim, and whether the length of time, from the date of the bond, be not presumptive evidence of payment." Under this agreement, judgment in the County Court was accordingly entered for the defendant, and an appeal taken by the plaintiff, to the Court of Appeals.

The case came on to be argued before BUCHANAN, Ch. J., and EARLE, STEPHEN, and ARCHER, J.

*Hoffman* and *Mayer*, for the appellant, argued that so far as the bar of limitation is concerned, the questions arising in the cause are:

1. Whether the plaintiff's claim is barred by the act of Assembly of 1729. *ch.* 24, *s.* 21, which declares, " That all

actions upon administration and testamentary bonds shall be commenced within twelve years after the passing of the said bonds, and not after."

**2.** If not barred by the act of 1729, *ch.* 24, *s.* 21, then whether the act of 1715, *ch.* 23, *s.* 6,—be a bar, under the provision that "no bill, bond, judgment, recognizance, statute merchant or of the staple, or other specialty whatsoever, except such as shall be taken in the name or for the use of our sovereign lord the king, his heirs or successors, shall be good and pleadable, or admitted in evidence against any person or persons of this province after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action above twelve years standing."

To support the position that the act of 1729, *ch.* 24, *s.* 21, is a bar, the defendant must contend that the bond given in this case is a testamentary bond; and that it is embraced, too, by that act, although the law (1798, *ch.* 101.) which first creates the bond in question, passed nearly seventy years after the former act.

I. The plaintiff contends that :

**1.** The bond in question is not a testamentary bond in its nature—being given only in order *to dispense* with a testamentary bond so called—and a testamentary bond being such as the testamentary act of 1798, *ch.* 101, prescribes to be given by an executor or administrator in the ordinary course of administration, and to secure his accountability to the Orphans' Court, but from which accountability, it is the pointed object of the present bond to free the executor or administrator :—That by giving this bond, the executor or administrator does for all purposes, except the form of probate and establishment of claims against the deceased, identify his representative with his own personal capacity—and that the bond, substantially, is not, therefore, his bond as executor or administrator, since it creates a liability that supersedes the qualified obligation peculiar to the legal character of executor and administrator.

2. That if the bond be a testamentary bond, from the char-acter of its provisions, it nevertheless does not come within the act of 1729, *ch.* 24, that act embracing only such bonds as existed of that designation when it passed, and that were then known to the testamentary system of Maryland, which was not the case with the present bond.

II. The plaintiff maintains that her claim is not barred by the provision of the act of 1715, *ch.* 23, *s.* 6.

1. Because the very terms of the bond require of the ex-ecutor only to satisfy such debts of the deceased as shall "*be recovered against him as executor;*" and that looking only to that mode of establishing *the fact of the liability of the deceased*, there can be no default of the executor to which the bond can apply, until a judgment be had against him *as executor*, and he refuse or fail to satisfy the judg-ment : And that, consequently, the present claim "*stand-ing in action*" only from 1816, the time of the judgment against the executor, until 1825, when this suit was brought, twelve years have not, according to the conditions of the act, run against the claim.

2. But, if even the terms of the bond did not *expressly* require a judgment to be obtained against the executor as preliminary to the claim of the creditor of the deceased on the bond, the nature of the obligation would, of itself, re-quire such previous proceeding: because, 1st, such is the mode alone recognised by common law for determining the fact of a testator being indebted; and the provision of the act creating this bond is not, except where necessity so requires it, to be construed to repeal or alter the antecedent common law of proof of claims against the deceased; but is to be un-derstood to have, by the bond, given an additional security for payment of claims *thus established*, in relieving the cre-ditor from the trouble of finding assets of the deceased : and, 2d, because the act of 1798, *ch.* 101, *sub ch.* 4. *s.* 6, contem-plates the proceeding against an executor, *as such*, to estab-lish the debt of the testator in declaring that, "*if suit be* "*brought against him* AS EXECUTOR, *the judgment shall be*

*for the whole sum found by the jury, or otherwise ascertained; and execution may issue and have effect as if he were sued in his own right;"* and, 4th, because the responsibility of the surety, now sued, being merely collateral to the liability of the executor *as* executor, the issue of the *testator's* liability for the debt, could not be tried in the suit against the surety on the bond: the only issue in such a suit being the *executor's* liability ; and all inquiry behind any judgment for the debt against the executor being denied to the surety.

3. The plaintiff, however, contends that if this be not deemed a testamentary bond within the act of 1729, *ch.* 24, then no act of limitation applies to *it*, since the act of 1715, *ch.* 23, *sec.* 6, the only act of limitation on the subject of bonds, excepts all bonds given *"in the name* or for the use" of the king: and the plaintiff maintains that the *State of Maryland*, to whom the bond in question is given, has succeeded to the same sovereign exemption that the king had by that section of the act: and that, but for the act of 1729, *ch.* 24, *sec.* 21, there would be no bar of limitations in this State against even an ordinary testamentary or administration bond ; such bonds not having been reached by the act of 1715, *ch.* 23, *sec.* 6.

III. On the point of presumption of payment from the lapse of time since the date of the bond, the appellant contends that this is not a case to which such presumption can apply.

1. Because it is applicable only to cases of bonds, with conditions for paying liquidated and fixed amounts at defined periods ; and not to bonds with collateral conditions for contingent or unascertained responsibilities, indeterminate both as to time and amount.

2. But, at all events, at the commencement of the suit, a sufficient time had not elapsed for such a presumption, according to the period fixed by the cases in *England* on this doctrine.

3. And the appellant contends, that the doctrine in question having grown up in *England,* to supply a bar of limita-

tions for bonds, for which no statute had provided, it is not to be recognised here, where there exists an act of Assembly establishing such limitations. The referred to the acts of 1715, *ch.* 23, *sec.* 6. 1729, *ch.* 24, *sec.* 21. 1798, *ch.* 101. *Sub. ch.* 14, *sec.* 6. *Val. Dep. Com.* 179. *Toll. Exrs.* 96, 496. 6 *Bac. Abr.* 383. *Ib.* 391. *Salisbury vs. Black,* 6 *Harr. and Johns.* 293. *Montgomery vs. Hernandez,* 12 *Wheat.* 129. Act of 1802, *ch.* 101, *sec.* 9. *Braxton vs. Winslow, Wash. Va. Rep.* 31. *Com. Dig. (Covenant) Letter E.* 2 *Saund.* 177. *Ward vs. Reeder,* 2 *Harr. and MᶜHen.* 152. *Kelly vs. Greenfield, Ib.* 138. *State vs. Rogers and wife,* 198. *State vs. Stump and Gilpin, Ib.* 174. *Murray vs. Ridley,* 3 *Ib.* 175. *Davidson vs. Clayland,* 1 *Harr. and Johns.* 548. *Hall vs. Gittings,* 2 *Harr. and Johns.* 112. *Howard vs. Moale, Ib.* 260. *Patterson vs. Md. Ins. Co.* 3 *Ib.* 71. 3 *Stark. Ev.* 1089.

*Meredith,* for the appellee.

The point on the presumption of payment from lapse of time is abandoned.

1. The bond on which this action is brought, is not within the exception of the 6th sec. of the act of 1715, *ch.* 23. It is to be sure, within the terms of the section; but the interpretation of a statute of this description, is to be liberal, its object being to put an end to controversies between citizens—the statute of *James* was by the Courts extended to the action of *assumpsit,* though it is not mentioned—in the exposition of statutes, common law principles are to be regarded. 6 *Bac. Abrid.* 384. 1 *Kent's Com.* 423. As evidence of the disposition of Courts to enlarge the operation of the act of limitations, he referred to *McLuny vs. Silliman,* 3 *Peters Rep.* 278. The reason of the rule, that limitations do not run against the *King,* only applies to cases in which he is directly interested, and not to cases, where, for the public convenience, his name is used, merely for the benefit of others. The object of the exception is perfectly obvious, and, to accomplish that object, the word " or" may

be read and, *Fowler vs. Padget*, 7 *Term Rep.* 509. He cited also *Schell vs. State*, 3 *Harr. and Johns.* 538. *State vs. Wright*, 4 *Ib.* 148, and the act of 1729, *ch.* 24, *sec.* 15.

2. The right to sue on this bond commenced immediately upon its execution—the executor thereby made the debts of his testator his own, and of course the preliminary proceedings against the executor, as such, are dispensed with—the act of 1820, *ch.* 24, applies only to ordinary testamentary bonds. *Salisbury vs. Black*, 6 *Harr. and Johns.* 293. *Angel on Lim.* 181.

3. The bond in this case is a testamentary bond, within the act of 1729 ; but if it is not strictly within the law, it is within its meaning and the mischief intended to be prevented, and the act will be expanded to embrace it. *Angel on Lim.* 162. The act of 1729, operates prospectively on bonds of this description. *Adams vs. Woods*, 2 *Cranch*, 336.

BUCHANAN, Ch. J. delivered the opinion of the Court.

The bond upon which this suit was brought, was given to the State by *Margaret McMechin*, who was executrix, and *William McMechin*, who was executor of *David McMechin*, with *D. Carroll and James P. Boyd*, as sureties, in pursuance of the act of 1798, *ch.* 101, *sub. ch.* 14, *sec.* 6, which provides, that " no executor shall be obliged to exhibit any inventory, or account, provided he will give bond, instead of the bond herein before directed, with such security, and in such penalty, as the Court shall approve to the State of Maryland, to be recorded, and sued, as before directed, with condition for paying all just debts of, and claims against the deceased, and all damages which shall be recovered against him as executor, and also all legacies bequeathed by the will," which are the words of the condition of this bond.

The defendant pleaded five pleas, upon some of which there were issues joined, and demurrers to the rest; whereupon at the trial, a judgment *pro forma* was rendered for the defendant, upon an agreement filed in the cause, by which the only questions presented to this Court on the ap-

peal are, whether either of the acts of limitations of this State, which were pleaded, be a bar to the appellant's claim, and whether the length of time from the date of the bond, be not presumptive evidence of payment. The latter point being abandoned by the Counsel for the defendant, our enquiry is restricted to the questions arising upon the pleas of the acts of limitations.

The act of 1729, *ch. 24, sec. 21,* provides, " that all actions upon administration and testamentary bonds, shall be commenced within twelve years after the passing the said bonds, and not after." This bond bears date the 21st of July, 1810, and the original writ was impetrated on the 26th of March, 1825, almost fifteen years after the date of the bond; and if it is to be considered as a testamentary bond, within the operation of that act, the right of the appellant to recover is thereby barred. Is it then such a bond? The condition is not, indeed, in the form of the ordinary testamentary bond, nor of that which was in use, when the act of 1729 was passed ; and such a bond given by one not connected with the administration of assets, but a mere stranger, would not be deemed a testamentary or administration bond. But any bond that is required by law to be given by an executor or administrator, by reason of the assumed representative character of executor or administrator, and to secure the payment of debts and legacies, or the faithful administration of assets, is a testamentary or administration bond, as the case may be. The bond in question was given in pursuance, and under the authority of an act of the Legislature, by an executrix and executor named in the will, to secure the payment of all just debts of, and claims against, the deceased, and also all legacies bequeathed by the will, and all damages recovered against them as executors, and does not destroy the representative character any more than the ordinary testamentary bond. On the contrary, the same section of the act, entitled " An act for amending and reducing into system, the laws and regulations concerning last wills and testaments, the duties of executors, ad-

ministrators and guardians, and the rights of orphans and other representatives of deceased persons," commonly called the testamentary system, which provides for the giving of such a bond by an executor, also provides, "that in case such a bond be given by an executor, he shall be answerable for all debts, claims and damages, recovered against him *as executor;* and if suit be brought against him *as executor,* that the judgment shall be for the whole sum found by the jury, or otherwise ascertained, and execution may issue and have effect. as if he were sued in his own right." Thus clearly shewing the continuance of the representative capacity, in which he may be sued, just as when the ordinary testamentary bond is given. With this difference only, that on giving such a bond, in lieu of the ordinary testamentary bond, he is discharged from the obligation to exhibit any inventory, or account, and is rendered answerable for all the debts, legacies, &c. with or without assets, coming to his hands. Whereas, in the case of the ordinary testamentary bond being given, he is subjected only to a qualified liability. And why should a bond by an executor, which, (whether assets sufficient come to his hand or not) subjects him to the absolute payment of all the debts and legacies, be deemed less a testamentary bond, than one which subjects him to an eventual liability only; when, in neither case does he lose his representative character; but may equally in each, sue, and be sued, as executor. By the 10th section of the 3d *sub. ch.* of the same act, it is provided, "that any bond executed by an executor or executrix, administrator or administratrix, as hereafter mentioned, shall be recorded in the office of the Register of Wills, where administration is granted;" and "that any person conceiving himself, or herself, interested in the administration of said estate, shall be entitled to a copy, upon which an action may be maintained, &c." The words "any bond executed by an executor," and "as hereafter mentioned," thus pointing as well to the bond provided for by the subsequent section, under which this bond was given, as to the ordinary bond by an execu-

tor, and making no distinction between them, but placing them on the same footing, by making them equally liable to be put in suit, by any person interested in the administration of the estate.   The section under which this bond was given, is a branch of the testamentary system providing for a particular mode of administering the estates of deceased persons ; and the bond required to be given by an executor, (and without which, letters testamentary cannot be granted,) like the ordinary bond of an executor, is for the protection and security of the rights of those interested in the adminis-- tration of the assets.   They are given under the same sys- tem, with the same object, by persons acting in the same ca- pacity, and equally under the directions of the will of the testator, and are, we think, equally testamentary bonds. Suppose the testamentary system had provided for no other bond to be given by an executor, could there then have been a doubt, whether it was or not a testamentary bond, and can it be considered as having a different charac- ter imparted to it, by the mere circumstance, that there is another bond provided for, suited to a different state of things, or to the mere ordinary mode of administration. But it is strongly urged that assuming this to be a testamentary bond, it is not within the operation of the act of 1729, which is supposed to contemplate only the testamentary bond, then in use in this State, and not to embrace testamentary bonds of any other description.   However ingeniously pressed, it is the opinion of this Court, that the position contended for cannot be sustained.   Statutes are sometimes extended to cases not within the letter of them, and cases are sometimes excluded from the operation of statutes, though within the letter; on the principle that what is within the intention of the makers of a statute, is within the statute, though not within the letter ; and that what is within the letter of a sta- tute, but not within the intention of the makers, is not with- in the statute, it being an acknowledged rule in the con- struction of statutes, that the intention of the makers ought to be regarded.   Viewing the bond in question as a testa-

mentary bond, it is within the letter of the statute of 1729, which speaks in terms of " all actions upon administration and testamentary bonds." Suppose then, the legislators who passed that law, were now convened, and asked whether they intended that it should operate only upon the administration and testamentary bonds then in use, or that it should extend to any *administration or testamentary bonds within the mischief intended to be provided for*, that might at any time be required, or authorised by law, to be given ? Can it be doubted what the answer would be, looking to the object of the legislature, which was the general repose and quiet of society, by protecting men from the vexatious prosecution of stale claims, supposed by length of time, to have been paid, but the evidences lost. Not a reason is to be assigned, why there should be a limitation of time to the bringing of suits, on the ordinary testamentary bonds, that does not apply with equal force to this. It is true, that such a bond as this was not at that time known, nor in common use, but the legislature had a right to create it, and it is equally true, that it is within the mischief intended to be remedied, that is the bringing of suits on testamentary and administration bonds, after a lapse of twelve years from their date, and also within the spirit of the act. And being within the spirit and reason, and letter of the act, and also within the mischief intended to be remedied, there is no rule of construction which excludes it from the operation of the act.

This view of the character of the bond, and of the operation upon it of the act of 1729, renders it unnecessary to enquire whether, if this was not a testamentary bond, the claim of the appellant would be barred by the act of 1715.

JUDGMENT AFFIRMED.