(Decided April 1st, 1897.)

---

## CONRAD DICKHAUT *vs.* THE STATE OF MARYLAND.

*Game Laws—Prohibition of Killing or Possession of Game During Certain Seasons—Possession of Game Killed in Another State—Act of 1894, Ch. 404, Relating to the Killing or Possession of Rabbits—Indictment.*

Where a statute prohibits the killing or having in one's possession certain kinds of game during certain months, the prohibition as to possession will be construed to relate only to game killed in this State, since the object of such statute is to protect the game in this State. And the possession here of game lawfully killed in another State is

not prohibited by such a statute unless explicit words are used to show that such is the intention of the Legislature.

The Act of 1894, ch. 404, provides that no person shall shoot, kill or have in his possession any rabbit between December 24 and November 1, ensuing. Defendant was indicted for having in his possession rabbits during the time prohibited. He offered evidence to show that these rabbits were killed in another State, where such killing was lawful, and shipped thence to him. *Held,*

1st. That the object of the statute was to prohibit the killing of rabbits in this State during the prescribed period.

2nd. That the prohibition against having rabbits in one's possession related only to rabbits caught or killed in this State.

3rd. That the evidence offered by the defendant, if found to be true, constituted a defence.

In an indictment for a statutory offence, it is sufficient to describe the offence in the words of the statute.

Appeal as upon writ of error from the Criminal Court of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE and BOYD, JJ.

*Wm. Pinkney Whyte,* for the plaintiff in error.

The indictment should have been quashed, because it did not sufficiently describe the person; in not describing him as of the class of persons against whom the statute was aimed, namely, those who *shot* or in any manner *caught or killed any rabbit in the State during the prohibited period,* or had in possession any rabbit *shot,* or in any manner *caught or killed in this State* during the prohibited period. This law being for the protection of the game of the State could have had no reference to the possession of live rabbits, kept as pets or kept for the increase thereof. It was necessary, therefore, in framing an indictment under this Act, that it should have described the person charged, as one of a class of persons, upon whom alone the provisions of the Act were designed to operate. *Bode* v. *State,* 7 Gill, 324.

The Act of 1894, chapter 404, is in violation of the provision of the Constitution of the United States (Article 1,

section 8), which confers upon Congress the power to regulate commerce among the several States.    " Congress shall have power   *   *   To regulate commerce with foreign nations and among the several States, and with the Indian tribes."    The history of this power is most luminously discussed in the case of *Bowman* v. *Chicago and N. W. R. R. Co.*, 125 U. S. 465.

A State cannot prohibit and stop the importation of lawful merchandise into its limits.    It would be a regulation affecting interstate commerce, which is a power lodged with Congress.    The right to prohibit or regulate sales of commodities within the State limits, which is a part of its police power, is a different thing.

This Act of Assembly does not regulate the sale within the State, but prohibits any person from having rabbits in his possession, whether imported by himself or consigned to him from another State, where it is lawful to have in possession, alive or dead, rabbits, at any time during the whole year.    This question is most clearly reviewed in the case above referred to.    The State may not, under cover of asserting its police power, substantially prohibit or burden either foreign or State commerce.    "The power vested in Congress" to regulate commerce with foreign nations and among the several States and with the Indian tribes, "is the power to prescribe the rule, by which that commerce is to be governed and is a power complete in itself, acknowledging no limitations other than those prescribed in the Constitution."    It is not within the police power of the State unless placed there by Federal Statute.    *Leisy* v. *Hardin*, 135 U. S. 108.    " Whenever the law of the State amounts essentially to a regulation of commerce with foreign nations or among the States, as it does when it inhibits, directly or indirectly, the receipt of an imported commodity or its disposition before it has ceased to become an article of trade between one State and another, or another country and this, it comes in conflict with a power, which in this particular, has been exclusively vested in the general government, and

is, therefore, void.    *Leisy* v. *Hardin,* 135 U. S. 123, follow-ing—*Bowman* v. *C. & N. W. R. Co.,* 125 U. S. 465. "While a State may perhaps regulate its sale, it cannot prohibit its importation.    The statute in question does this, and is un-constitutional and in this respect, void."    Circuit Court U. S. Md., June 11, 1892, *In re McAllister,* Judge Bond, 51 Fed. Rep. 282.    Section 8 of Article 1 of Constitution, gives Congress exclusive power to regulate commerce among the several States, and when Congress refrains from exer-cising that power in relation to any subject, commerce is free and cannot be interfered with by the States.    It was so held in *Brown* v. *Houston,* 114 U. S. 631.    "In quite a number of subsequent cases, the Supreme Court has held the same doctrine in applying it to a constantly varying con-dition of facts."    It is respectfully submitted, that the Act upon its face is unconstitutional and void, and that the de-murrer should have been sustained.

The facts in the case show that the lot of rabbits referred to in the indictment had been taken in West Virginia, im-ported into Maryland, and sold to the plaintiff in error.    It is contended that a proper construction of the Act shows that it does not apply to a case like the one at bar.    There are statutes in some of the other States similar in char-acter, but not identical in words, and on that account there has been some conflict of authority upon the ques-tion.    In Massachusetts, under a somewhat similar Act, the Supreme Court held that the law did not apply to imported game ; but there the law only makes possession *prima facie* evidence, and upon showing the importation, the accused cannot be convicted.    *Com.* v. *Hall,* 128 Mass. 410.    The Massachusetts construction is followed in the Courts of the Province of Ontario, Canada.    All statutes of this kind are intended to protect the game in the States, where passed ; that in the absence of language reasonably clear, the statute should not be interpreted as applying to birds, killed elsewhere.    *Davis* v. *McNair* (Canada), 2 Cen-tral Law Journal, 480.    In Michigan, the law is like that of

Massachusetts, possession is only *prima facie* evidence, and the accused can clear himself by proving importation. *People* v. *O'Neill*, 71 Mich. 325. Thomas O'Neill was convicted of having in his possession a lot of quail within the prohibited time. He was fined $50 and costs. On appeal, the prisoner was discharged, because the quail he had in possession was imported from another State. So the Pennsylvania Act (June 3, 1878), enacting that no person shall kill or expose for sale, or have in his or her possession, &c., after the same has been killed, within certain dates, is construed not to apply to the possession of game killed in another State. *Com.* v. *Wilkinson*, 139 Pa. 298.

The articles interdicted are articles of food, and the interdiction is not because such food is unwholesome, and, therefore, detrimental to the public health, but the whole end and object of the law is *to protect and preserve the game in the State of Maryland.* This law cannot be violated, either in letter or spirit, by importing game from other States to supply food to citizens of Maryland. It will be a great deprivation to the citizens of this State, that they cannot import from other States wholesome food for their own use, if this conviction is sustained. Even if it was a *health* law, enacted under the police power of the State, it must be a reasonable one, properly devised for preventing the evil, at which it is aimed ; so devised, as to effectuate that purpose and no more ; and not to subserve other objects not essential to the public safety. *Ex parte, Scott*, Judge Hughes, 66 Fed. R. 46. Allowing prairie chickens to be killed, but prohibiting transportation to another State is unconstitutional and void. *State* v. *Saunders*, 19 Kans. 127. Why shall not the reverse of this proposition be correct ? Game killed in another State in a wholesome condition cannot be kept out of the State, as an article of commerce, by any State law. The judgment should be reversed.

*Harry M. Clabaugh, Attorney-General,* for the defendant in error.

The agreed statement of facts shows that the appellant

was arrested for having on his stall in market ninety-six rabbits, which were lying upon the stall and not tied together ; that they were purchased by him from a commission merchant, and were a part of a lot of rabbits that the commission merchant had just received from West Virginia. That there is no law in said State prohibiting the killing or catching of rabbits at any period of the year. " The wild game within a State belongs to the people in their collective, sovereign capacity ; it is not the subject of private ownership, except in so far as the people may elect to make it so ; and they may, if they see fit, absolutely prohibit the taking of it, or any traffic or commerce in it, if deemed necessary for its protection or preservation or the public good." *Ex parte, Maier*, 103 Cal. 476 ; *42 Am. State Rep.* 130. The enactment of laws by legislative bodies for the protection of game, is clearly within the police powers of the State. " The preservation of game and fish, however, has always been treated as within the proper domain of the police power, and laws limiting the season within which birds and wild animals may be killed or exposed for sale, and prescribing the time and manner in which fish may be caught, have been repeatedly upheld by the Court." *Lawton* v. *Steele*, 152 U. S. 138. "The adjudicated cases recognizing the right of the States to control and regulate the common property in game are numerous." *Geer* v. *Connecticut*, 161 U. S. 528. The case just cited discusses with great exhaustiveness the right of States in the enactment of laws for the preservation of game, and in the opinion, Mr. Justice White cites an endless array of authorities in support of the view taken by the Court, and it would seem from an inspection of them that the Legislature of Maryland had ample authority for the exercise of this police power in the enactment of the law in question. It is true, the action of the legislative body in the exercise of its police powers is not always final and conclusive, but is subject to the supervision of the Courts ; " such regulations must be reasonable," and " what are reasonable regulations * * *

must necessarily be judicial questions." *Long* v. *State*, 74 Md. 568.

It will be urged that the statute in question is unreasonable, because the mere possession of the prohibited articles is unlawful. That ought not, however, to be the test, because being a public law, no one can plead ignorance of it. What then would excuse a person for having in his possession an article, the possession of which is prohibited ? It is very well known that laws of this character are most easily evaded, and convictions almost impossible, when anything is added to the law that permits the fact of possession to be explained or excused. The authority for this character of statute is abundant. In the case of *State* v. *Lewis*, 33 N. E. Rep. 1024, we find a very analagous statute. By the Revised Statutes of Indiana " it is hereby declared a misdemeanor for any person to have in his possession any gill net or seine, &c." In the case just cited the Court holds that this " statute is a constitutional exercise of police power," and says: ''Statutes making it a criminal offence in certain cases to have counterfeit money, or dies, or tools for making counterfeit money, in one's possession, are universally held valid," &c. And the Court says, again : " One of the principal objections urged to the law is that it deprives the citizens of a class or species of property, or the right to own and possess the same, which in itself is harmless, and in which of itself there is no inherent evil, and not a dangerous commodity. It is contended that a seine is a legitimate species of property, harmless in itself; * * that this law unwontedly deprives one of the lawful uses and possession of such property ; that it makes it unlawful to have it in his possession ; that it prohibits the manufacture of seines for lawful purposes within the State ; * * * that it even prohibits the transportation of them across the State by a common carrier, for it makes it unlawful to have one in possession. * * * The fact that they are made of material harmless in itself, and valuable for other uses, does not change the right of the State to prohibit the use

of or the possession of such material, when woven into nets used solely for the purposes of catching fish at times, and in waters prohibited by statute, &c."

It may, however, be urged that this doctrine may be true as to rabbits killed or in possession during the closed season and which were killed within the State, but that Act of 1894 does not apply to rabbits brought into the State from another State where it was lawful to kill them.

The statute must be construed according to its natural intent; and it is manifest from the plain language of the Act that the mere possession of rabbits during the closed season was an indictable offence. It is respectfully urged that any other construction of the Act is strained and unnatural; and, therefore, unless there is something unconstitutional about it, the Court must interpret and enforce it according to its terms. An almost identical statute was construed by the Supreme Court of Ohio in a very recent case. The Court said : "A statute making it criminal for a person to have in his possession or to purchase or sell certain game, birds or animals at the times designated therein, is constitutional, though applicable to birds or animals killed outside of the State where such killing was unlawful." *Roth* v. *State*, 51 Ohio State, 209 ; 46 *Am. Stat. Rep.*, 566. Precisely the same doctrine has been sustained in Illinois upon a similar statute. *Magner* v. *People*, 97 Ills. 331. The Court of Appeals of New York held to the same effect, upon a like statute when it says : " The penalty is denounced against the selling or possession after that time (close of the open season), irrespective of the place of killing." *Phelps* v. *Racey*, 60 N. Y. 10 ; also *The New York Game Association* v. *Durham*, 57 N. Y. S. C. 306 ; *State* v. *Randolph*, 1 Mo. App. 15; *Whitehead* v. *Smith*, 21 Moak's Eng. R. 458. One of the most thoroughly well argued cases in support of the statute in question is found in the case already quoted. *Ex parte Maier*, 103 Cal. 476.

Nor is the Act of 1894, chapter 404, in contravention of Article 1, section 8, of the Constitution of the United

States. The facts in this case show that the rabbits bought by and conceded to have been in the possession of the appellant were a part of a lot secured from West Virginia by a commission merchant. In other words, the original package had been broken, and this being so, the goods became subject to the State law. " This right of sale was distinctly limited to the right of the importer to sell or dispose of the article imported in its original, unbroken package, or condition, as brought by him into the State, * * * and that the authority of Congress over any article of commerce imported into a State ceases—when the importer has so acted upon it that it has become incorporated and mixed up with the mass of property in the country, which happens when the original is no longer such in his hands." *Leisy* v. *Hardin*, 135 U. S. 100 ; *Bowman* v. *Chicago, &c., Ry. Co.*, 125 U. S. 465.

There are many instances in which interstate commerce may be affected by the exercise by a State of the police power, but so long as the State legislation does not " regulate " commerce between the States, it has a legal right to use its police power. " The right to preserve game flows from the undoubted existence in the State of a police power to that end, which may be none the less efficiently called into play, because by doing so, interstate commerce may be remotely and indirectly affected." *Geer* v. *Conn.*, 161 U. S. 534.

FOWLER, J., delivered the opinion of the Court.

The defendant was indicted in the Criminal Court of Baltimore City on the charge of having violated sec. 13 of Art. 99 of the Code, as amended by the Act of 1894. The only allegation in the indictment is, that the defendant on the 24th October, 1896—being a time within the prohibition of the statute—had in his possession ninety-six rabbits, contrary to the form of the Act of Assembly, &c., &c. To this indictment the defendant demurred, and his demurrer was overruled. He then filed a motion to quash the indictment

based upon the ground, first, that the statute is intended to apply only to persons who shall shoot or in any manner catch or kill any rabbit in the State of Maryland or have in possession any rabbit, so killed, &c.,.in this State within the prohibited time, and, second, that the indictment is defective because it does not so describe the defendant as to bring him within the class of persons to which the statute applies. This motion having also been overruled, the defendant pleaded *non cul*, was tried before the Court without a jury, convicted and sentenced. During the course of the trial the defendant proved that the rabbits found in his possession were shipped here from the State of West Virginia, where there is no law prohibiting the killing or catching of rabbits at any period of the year. But under the construction of the statute adopted by the learned Court below, this proof did not avail the defendant, for no matter when or where the game was killed, under that construction he was guilty, it having been held that proof of possession was conclusive proof of guilt. The record is before us on writ of error on the petition of the defendant.

The question presented under the facts in this case, and especially upon the admitted fact that the rabbits found in the possession of the defendant were lawfully killed in West Virginia, and were brought here, is whether the defendant is guilty of any offence in having them in his possession at the time and place alleged.

The answer to this question depends upon the construction of the provisions of the Code, sec. 13, Art. 99. As amended by the Act of 1894, ch. 404, it thus reads : " No person shall shoot or in any manner catch, kill or have in possession * * * any rabbit between the 24th December and the first of November next ensuing." It is such a plain proposition that when the Legislature prohibited the catching and killing of rabbits, it meant rabbits in this State, that no argument is necessary to establish it. If it was intended that the statute should operate beyond the limits of the State, it was simply void to that extent.

It would seem also to be clear that if the prohibition as to catching and killing was necessarily limited to rabbits caught and killed in this State, the prohibition against having any rabbits in possession would relate only to rabbits caught and killed here, for we are not to assume that the Legislature intended to do what it had no power to do, that is, to prohibit the killing of game in other States, unless such intention can be clearly gathered from the Act itself. But so far from any such intention having been expressed the most casual reading will demonstrate that all the prohibitions relate to the same limited class. If, as we have said the prohibition as to shooting and killing necessarily relates only to rabbits caught and killed in this State, the statute would read, " No person shall shoot or in any manner catch, kill or have in possession any rabbits between the 24th December and the first of November ensuing, killed in this State between said days." But if the construction of the State be correct, and if we assume as we must from the collocation of the words and the arrangement of the clauses of the sentence, that the same class of rabbits is referred to in each prohibition the statute would read thus : " No person shall shoot or kill between the 24th December and the first of November ensuing in this or in any State any rabbit or have in his possession during said time any rabbit killed in this or any other State at any time." But as we have said a prohibition as to killing game in other States is clearly inoperative and void, and therefore, we cannot impute to the Legistature an intention to enact such a prohibition. It follows, we think, that the prohibition as to possession relates to the same class that the prohibition as killing embraces, namely, rabbits killed, &c., in this State between the days named.

Statutes similar to ours exist in both Pennsylvania and Massachusetts, and the Supreme Court of each of those States has held that it is no offence to have in possession within the prohibited time, game lawfully killed in and shipped from other States. Thus in the case of the *Com-*

*monwealth* v. *Wilkinson,* 139 Pa. St. 298, the opinion of the
Court was delivered by the former CHIEF JUSTICE PAXON.
The statute construed is as follows: " No person shall kill or
expose for sale or have in his possession after the same has
been killed, any quail between" certain days.

"The manifest object of this Act," says the Chief Jus-
tice, " was the preservation of game within this Common-
wealth.   We cannot assume that it was intended to preserve
game elsewhere, and it would be a forced construction to
hold that it was intended to exclude from our markets quail
and other game killed in other States, where, by the law of
those States, the killing of them is lawful.   The law was
not intended to have any extra territorial force, and if so, it
would be nugatory.   The construction claimed for the Act
by the Commonwealth would render any one a criminal
who lawfully killed quail in another State and brought it
here for his own use.   It would be *prima facie* evidence of
a violation of the Act, and if he could not show as a de-
fence, that he killed them outside the Commonwealth, he
would have no defence at all.   The matter is too plain to
require elaboration."   And in the case of the *Commonwealth*
v. *Hall,* 128 Mass. 412, a similar statute was construed in
the same way.   In delivering the opinion of the Court
CHIEF JUSTICE GRAY said that the object of the statute was
to protect the birds in Massachusetts.   "The mode in
which the statute seeks to attain this object is by punishing
the taking or killing of such birds in this Commonwealth
during the time specified, or the buying or selling or hav-
ing in possession in this Commonwealth during such time
such birds so taken and killed, and by enacting that the pos-
session in this Commonwealth at such times of any birds
of the kind specified shall be *prima facie* evidence to con-
vict, leaving it for the defendant to prove, if he can, that
the birds found in his possession were not taken or killed in
this Commonwealth at a prohibited time.   So construed the
statute is reasonably adapted to carry out its object, and is
free from all constitutional difficulty."   It was conceded in

the Massachusetts case just cited, as it is in this case, that the game found in the defendant's possession was killed in another State, and for this reason it was held he was wrongly convicted, and the judgment was reversed. And finally the same view has been adopted by the Supreme Court of Oregon in a clear and well reasoned opinion by CHIEF JUSTICE LORD in the case of *State* v. *McGuire*, 24 Oregon Rep. 367; S. C. 21 L. R. A. 478. The statute before the Court for construction is like ours, and we will quote only that part of it which relates to and prohibits the having in possession: " It shall be unlawful for any person or persons to receive or have in his possession during the close seasons named in this Act any of" certain varieties of fish. In the lower Court it was held that under this Act the fact of possession was conclusive proof of guilt; but the Chief Justice says in delivering the opinion of the Court : " The effect of this construction is to declare that in order to protect salmon in this State it was the intention of the statute to punish * * * the having in possession salmon during the prohibited season whether caught within or without the State—in a word that it was the intention of the Legislature to punish the mere possession of salmon which had been lawfully caught or taken. It ought to require plain, unambiguous and mandatory language to justify any Court in declaring fish and game lawfully caught or taken to be the subject of an offence by the simple possession of it. A construction leading to such injustice ought to be avoided if it can be reasonably done." It was, therefore, held by the Supreme Court of Oregon, after citing and reviewing many of the leading cases, those sustaining as well as those opposed to the views it announced, that properly construed the Oregon statute does not relate to or embrace fish or game lawfully taken in another state and found in possession of any person in Oregon during the close season.

There is much conflict of opinion upon this question and we shall not undertake to review or harmonize the numer-

ous cases involving questions of construction and the con-
stitutionality of the game laws of the various States. The
cases have been collected by the learned annotator in the
notes to the case of *State* v. *McGuire*, 21 L. R. A. 478.
See also 13 L. R. A. 804; 29 L. R. A. 715. In a recent
number of the *Am. Law Reg. and Review*, Oct. 1896, vol.
35, N. S. 649, will also be found some brief notes and a
full collection of recent decisions. But the question of
the constitutionality of our statute, because of its alleged
conflict with the interstate commerce clause of the United
States (Art. 1, sec. 8), we need not consider here, for as
we have already said, it is clear that, when properly con-
strued, it has no relation whatever to game lawfully killed
out of this State, and brought here for use or for sale.

It was contended that the indictment is defective because
it did not sufficiently describe the defendant and failed to
allege that he had in his possession game shot, &c., in this
State during the close season. It is well settled as a gen-
eral rule that in an indictment for an offence created by
statute it is sufficient to describe the offence in the words of
the statute. *Parkinson* v. *State*, 14 Md. 184; *Cearfoss* v.
*State*, 42 Md. 403; *Mincher* v. *State*, 66 Md. 227. The
pleader has followed this rule in this case, and hence the
objections is not a valid one. There was also a motion to
quash the indictment upon the same ground, and this was
also properly overruled.

But, as has been seen, from what we have already said
we are not able to agree with the learned Judge below in
the construction of the provision of the Code under which
the defendant was indicted. As we construe it, possession
in this State during the close season of game killed in an-
other State is not an offence. And this being so it follows
that whenever any person is charged with a violation of the
law by having in his possession game during the prohibited
time, simple justice demands that when the State has offered
proof of the charge, he must have the right and the op-
portunity to show that the game found in his possession is

not such game as is contemplated by the statute.   As was said in *State* v. *McGuire, supra,* only the plainest and most mandatory language of the lawmakers would justify any Court in holding that the *mere possession* of game lawfully killed would constitute an offence.

It follows from what we have said that the facts proved by the defendant, if believed by the Court sitting as a jury, constituted a good defence, and the defendant should have been acquitted.

> *Judgment reversed and a new trial awarded.*

(Decided April 1st, 1897).