STATE OF MARYLAND *v.* MORRIS PETRU-
SHANSKY
SAME *v.* LOUIS RUDOLPH

[Nos. 24 and 25, January Term, 1944.]

68

*Decided March 23, 1944.*

The cause was argued before SLOAN, C. J., DELA-
PLAINE, COLLINS, MARBURY, MELVIN, and BAILEY, JJ.

*J. Edgar Harvey, Assistant Attorney General,* and
*Hall Hammond, Deputy Attorney General,* with whom
were *William C. Walsh, Attorney General,* and *J. Bern-
ard Wells, State's Attorney for Baltimore City,* and
*Anselm Sodaro* and *Joseph G. Finnerty, Assistant State's
Attorney for Baltimore City,* on the brief, for the State.

*Hilary W. Gans,* with whom were *S. Ralph Warnken*
and *Samuel S. Levin,* on the brief, for the appellee,
Petrushansky.

*Oscar W. Zenitz,* with whom was *M. William Adelson,*
on the brief, for the appellee, Rudolph.

MARBURY, J., delivered the opinion of the Court.

The General Assembly of 1943 passed an Act, known
as Chapter 996 of the Acts of that year, which is amend-
atory of Article 2B of the Code of Public General Laws.
Among other enactments, it added a section to that
Article, known as Section 89A, which reads as follows:

"89A. Storage of Alcoholic Beverages. No licensee
shall store or keep any alcoholic beverages except on the
premises covered by the license or at a public or govern-
ment controlled warehouse having a permit issued under
the provisions of this Article."

Indictments were returned in Baltimore City in two
cases against alleged violators of this section. The in-
dictments in each case were laid in the language of the
statute. Demurrers were interposed in each case, and in
each case were sustained. In each case the State has
appealed. The two cases were heard here together, as
the questions raised affect both accused alike. The legal
positions taken by them are different in some respects,

but all the contentions made will be considered in this opinion which will control both cases.

The first contention is that made by the appellee Rudolph who says that Section 89A is plain and unambiguous, that it should be construed to affect the storage of all alcoholic beverages, whether for purposes of sale or not, and that so construed it violates the constitutional privileges and immunities of a licensee-citizen, and prevents him from exercising rights freely permitted to other citizens.

The State does not agree to this construction of the section; nor does the appellee Petrushansky, although the latter does contend that if this is found to be the true meaning of the statute, it is unconstitutional. Neither did the lower court give the statute this strict construction.

The State and the lower court and the appellee Petrushansky all construed the statute to prohibit the storage elsewhere than allowed of only those alcoholic beverages intended for re-sale. Based on this construction the lower court held the indictments defective because they did not state that the beverages alleged to be unlawfully stored were so stored or kept for purposes of sale. Both the appellees, of course, agree with this ruling, but the State contends that as the indictments are in the words of the statute, they are sufficient.

The first question arising is then the proper construction of the statute. There is, of course, a well known rule that where there are two possible constructions, and one of them makes a statute of doubtful constitutionality, courts will adopt that view of the enactment which establishes it free of fundamental objections. In our view of these cases, however, we do not have to invoke this rule, because we think the obvious purposes of the law and the method of its adoption show clearly its meaning and intent.

The General Assembly was called unto extraordinary session in November, 1933, largely for the purpose of passing laws relating to the control of the manufacture

and sale of intoxicating liquor in the state. This was thought necessary because of the repeal of the 18th Amendment to the Constitution of the United States, generally known as the Prohibition Amendment. One result of this special session was the passage of Chapter 2, which added a new article to the Code of Public General Laws which was to be known as Article 2B, to be entitled "Alcoholic Beverages," and among other things was to "license, regulate, and control the manufacture and sale of alcoholic beverages within the State of Maryland." Subsequent sessions of the General Assembly have passed amendments to this Act and Chapter 996 of the Acts of 1943 is one of these amendments. The proper rule of construction is that all parts of such an article of the Code as this is, must be read together as they form part of a general system. *Spielman vs. State,* 27 Md. 520; *Read Drug and Chemical Company v. Claypoole,* 165 Md. 250, 166 A. 742; *Robey v. Broersma,* 181 Md. 325, 29 A. 2d 827. And Article 2B itself has been so read by this Court. *Baltimore Liquor Stores Assn. v. Commrs.,* 171 Md. 426, at page 431, 189 A. 209. The Act of 1943, Chapter 996, made a number of charges in Article 2B, one of which was the enactment of Section 89A, which was intended to permit a licensee to store alchoholic beverages at a public government controlled warehouse having a permit. This was important as a privilege to a licensee, and also important to the state for purposes of inspection, taxation, etc. The whole article is concerned with alcoholic beverages which are manufactured or sold, and it obviously is not intended to affect any supply of liquor which a licensee may keep at his home or some other place for his own personal use.

It is not judicial legislation for courts to construe acts according to their obvious intent and meaning, considering the purpose of their enactment. That is one of the cardinal rules of construction of statutes. Real intent must prevail over literal intent. *State v. Boyd,* 2 G. & J. 365; *Canal Co. v. Railroad Co.,* 4 G. & J. 1; *Gearfoss v. State,* 42 Md. 403 at page 406; *Mitchell v.*

*State,* 115 Md. 360, 80 A. 1020; *Jones v. Gordy,* 169 Md. 173, 180 A. 272. Article 2B of the Code has already been thus construed by this Court as intending "to regulate and control the liquor traffic in the State." *Powell v. State,* 179 Md. 399, 18 A. 2d 587. See also *Zukowski v. State,* 167 Md. 549 at page 554, 175 A. 595. The literal construction of 89A insisted upon by the appellee Rudolph would prevent the licensee from keeping any sort of alcoholic beverage in his home for the purpose of entertaining guests, or for medicinal purposes, and for his own personal use. To assume that the Legislature intended such a result as this without declaring it in very definite words would be to reach a conclusion which is repugnant to common sense, and which would attribute to the legislative mind something which there is no reason to suppose it contemplated.

There have been a number of cases in which this Court has declined to construe the words of a statute in such a way as to give them a ridiculous meaning. In the case of *Cearfoss v. State,* 42 Md. 403, there was an indictment for giving away liquor on election day. The statute was attacked on the ground that it was so broad that it would interfere with the giving of medicine. The Court said, "Whether the administration of intoxicating liquor, in good faith, for medicinal or other necessary purposes, although within the letter, would be within the mischief, is a question not necessary to be decided in this case, but if it should ever arise, we should have no hesitation in saying that it would not be an offense within the spirit of the Act." In another case a statute was before the court which prohibited the possession of rabbits within certain specified periods of the year. The testimony showed that the rabbits found in the possession of the defendant were lawfully killed in West Virginia. Notwithstanding, the defendant was convicted under a narrow interpretation of the statute. This Court said that the prohibition in the statute as to catching and killing rabbits necessarily applied only to this state, and that since this was so, it was clear that the prohibi-

tion against having any rabbits in possession related only to rabbits caught and killed here. *Dickhaut v. State,* 85 Md. 451, 37 A. 21. In another case a traverser was indicted for selling and giving away intoxicating liquors under a local law of Talbot County. He contended that the Act was void because it did not contain a proviso excepting the giving of liquor by private citizens to the members of their households or to guests in their homes. The Court overruled this contention because it did not think that under any circumstances it was intended, or it would be reasonable, to give the Act the extended application contended for. *Parker v. State,* 99 Md. 189, 57 A. 677. In a very recent case decided at this term of Court (No. 2 of the January Term of 1944), we had before us an Act prohibiting the erection of billboards or structures intended to aid in the solicitation or performance of marriages. It was contended that by the terms of this Act a minister could not post his name or address on a board on the front of his church. We declined to adopt any such strained interpretation and held that it would be far-fetched and unreasonable. *State v. Clay,* 182 Md. 639, 35 A. 2d 821.

It is, of course, a well recognized principle that, in the determination whether or not an Act is within the constitutional prohibitions, regard must be had to what *can* be done under it, rather than what *will* be done. *Grote v. Rogers,* 158 Md. 685, 149 A. 547; *Raney v. Co. Commrs.,* 170 Md. 183, 183 A. 548; *Theatrical Corp. v. Brennan,* 180 Md. 377, 24 A. 2d 911. This principle has no application here, because we construe Section 89A as intending no restriction on the storing and keeping of alcoholic beverages for purposes other than for sale. As so construed, no action can be taken against a licensee for keeping liquor at his home or elsewhere for his own personal use. No constitutional question is therefore before us, in this connection.

This brings us to the second question in the case—namely, are the indictments sufficient if laid in the words of the statute, or must they contain also statements

74

that the alcoholic beverages were stored or kept for purposes of sale. The lower court held that they must contain such additional statements, and sustained demurrers to them.

There is a well known line of decisions of this court holding that, under certain conditions, exceptions contained in statutes must be negatived in indictments, while under other statutes, the exceptions are matters of defense. Such cases are *Rawlings v. State,* 2 Md. 201; *Kiefer v. State,* 87 Md. 562, 40 A. 377; *Howes v. State,* 141 Md. 532, 119 A. 297 (where most of the earlier decisions are discussed), and the late case of *Richardson v. State,* 175 Md. 216, 200 A. 362. While the general subject considered in these cases is related to that before us, they are not in point, because there the question is, how much of a statute must be recited in an indictment. Here the question is, must anything be added to the wording of the statute.

The primary purpose of an indictment is to fulfill the constitutional requirement that each person charged with crime must be informed of the accusation against him (Md. Declaration of Rights, Article 21). In addition, the charge must be sufficiently explicit to prevent the accused from again being charged with the same offense.

The general rule in this State is that in indictments for statutory offenses, it is sufficient to lay the indictment in the words of the statute. *Bosco v. State,* 157 Md. 407, 146 A. 238 (where fourteen earlier cases are cited as authority); *Coblentz v. State,* 164 Md. 558, 166 A. 45; *State v. Coblentz,* 167 Md. 523, 175 A. 340; *Kirschgessner v. State,* 174 Md. 195, 198 A. 271; *Richardson v. State,* 175 Md. 216, 200 A. 362. In the few cases where it has been held necessary to add additional words, special circumstances have been present, or certain obviously important details such as names or places have been omitted. Thus in the early case of *Bode v. State,* 7 Gill 326, which was a prosecution for selling spirituous liquors on the Sabbath, the court first construed the statute to apply only to licensee, and then held it was

necessary to state in the indictment that the party accused was a licensee. The reason for this was that, on a second offense the Court had to declare the offender's license null and void, and the court would not be able "to execute this part of the law unless it appeared upon the face of the indictment that the party charged was a licensed tavern keeper or a licensed retailer." A similar reason was given for holding an indictment bad in *Kenny v. State*, 121 Md. 120, 87 A. 1109. In the case of *Armacost v. State*, 133 Md. 289, 105 A. 147, the charge was obtaining credits, goods and wares on a bad check. Neither the nature or the ownership of the credits, goods and wares was alleged. This indictment was held not to identify the specific charge preferred. Obviously, it would not protect the traverser if he should again be placed in jeopardy for the same offense. In *State v. Lassotovitch*, 162 Md. 147,, 159 A. 362, where the charge was a failure to pay a minimum wage, it was held that the names of the parties to whom such wage was not paid should be included in the indictment. This was necessary for the same reason—that the accused might not be placed in double jeopardy by another prosecution.

A case more like the one before us is *Dickhaut v. State*, 85 Md. 451, 37 A. 21, already cited as holding that a statute prohibiting the having in possession of rabbits did not apply to rabbits lawfully killed out of the State. The indictment did not specify where the rabbits were killed, and it was attacked because it did no allege that the rabbits had been killed in this State. The court held the indictment sufficient, because brought in the words of the statute, leaving the traverser to raise the question of where the rabbits were killed as his defense at the trial.

One of the latest discussions of the question when extra words must be added to those in the statute is found in the second Coblentz case, *State v. Coblentz*, 167 Md. 523, 528, 175 A. 340, 343. There this Court, speaking through Chief Judge Bond, said, "There are very few exceptions to the rule that the words of a

statute creating and defining a crime are sufficient for a charge of committing it." And in holding the indictment in that case sufficient the rule was thus stated, "The '(statutory)' words must be sufficient to meet the practical needs which an indictment is intended to supply, but if these needs are met, the rule holds, and the words of the statute are sufficient."

An application of these principles to the indictments before us reveals no failure to inform the appellees of the charges against them, no lack of definitions which might cause them again to be in danger of another charge for the same offense, and no special reasons for informing them or the court that they are charged with storing or keeping the whiskey for sale. If they did not have it for sale, that is a matter particularly within their knowledge which they can offer as a defense at the trial. They are not harmed by any failure to allege it, and are made fully aware by the indictments of the statutory offenses with which they are charged. We are unable to agree with the learned judge below that the indictments are bad.

> *Order sustaining demurrer and quashing indictment and discharging defendant Q. E. S. D. in No. 24 reversed with costs.*
>
> *Order sustaining demurrer and quashing indictment and discharging defendant Q. E. S. D. in No. 25 reversed with costs.*