THE STATE OF MARYLAND *vs*. JOHN PRICE.—*December*, 1841.

Where the enacting clause of a penal act contains an exception, it is not indispensable that an indictment framed under it should set forth an express negation of it.

Where the charge preferred *ex natura rei*, as conclusively imports a negation of the exception, as if such negative had been in express terms, no rule of construction requires more.

Where exceptions are in the enacting part of a law, it must appear in the charge, that the defendant does not fall within any of them.   A case must be averred which brings the defendant within the act.   That a faro table is not a billiard table, is a fact of such notoriety as to be within the knowledge of the community at large; and hence there is no presumption of law or fact which will prevent the court from judicially knowing what a faro table is.

If a billiard table, which is excepted from the penalties of the act, were in fact used as faro table, *ipso facto*, it would lose the immunity conferred upon it.

APPEAL from *Baltimore* county court.

This was an INDICTMENT charging that the appellee on, &c., at &c., " unlawfully did keep a certain gaming table called a *faro table*, at which said gaming table, unlawfully kept as aforesaid, the game of *faro* was then and there unlawfully played for money, against the act of Assembly in such case made and provided, and against," &c.

The traverser demurred to the indictment, in which the State joined, and the county court sustained the demurrer. The case was brought up on writ of error by the State, and was argued

Before STEPHEN, DORSEY, CHAMBERS and SPENCE, J.

The act of 1826, ch. 88, under which the indictment was found, enacted, that " every person who shall be duly con-' victed of keeping any E. O. table, or any other kind of' ' gaming table, (*billiard tables excepted*,) at which the game of ' Pharo, Equality, or any other game of chance shall be play-' ed for money, shall for the first offence forfeit and pay," &c.

By BOYLE, D. A. G. for the State—

Who maintained that the indictment sufficiently negatived the exceptions in the act of 1826, that a faro table was not a billiard table.

By HANDY, PITTS and RICHARDSON for the appellee.

The negative words of the statute found in the enacting clause must be followed in the indictment. 1 *Chitty Crim. Law*, 190, 192 ; 1 *Burr.* 152 ; 1 *D. & E.*, 84 ; *Archb. Crim. Prac.* 21, 20. The indictment should conclude against the form of the act, and not against the act of Assembly. 2 *East. Rep.* 332 ; 7 *Massa.* 9. This offence was unknown to the common law, neither keeping a table nor gaming was punishable. The offence at common law was keeping a gaming house, a nuisance tending to the destruction of good morals. This is a statutable offence, and the exception in the body of the act is a part of the legislative description of the thing intended to be prohibited, and hence the very words of the act

ought to be used.   1 *Barn. and Ald.* 99 ; 1 *Russ. and Ryan,* 321 ; 7 *D. and E.* 18.   Hence, the exception ought to be negatived.   The court cannot judicially know what a faro table is. They cannot know that it is not a billiard table, nor can they look out of the indictment for the description of the offence.

DORSEY, J. delivered the opinion of this court.

The correctness of the judgment of the county court, it is asserted by the appellee, is fully established by the general principle, as stated in *Archb. Cr. Pl.* 21, and other elementary writers upon the subject, "that if there be any exception contained in the same clause of the act, which creates the offence, the indictment must shew, negatively, that the defendant or subject of the indictment does not come within the exception."   If the meaning of this rule be, as is contended, that the indictment must contain an express negation of the exception, it is not warranted by a fair construction of the opinions of the court, in the cases referred to, as its basis.   In announcing such a principle, the court must be understood as asserting it in reference to the cases then before it, and those of a similar character.   In all of which it will be found that, but for such negation, the guilt of the accused would not conclusively appear.   Under the exception he might be innocent, although every allegation against him be fully proved.   The rule, in such cases, and in such only has it ever been declared from the bench in any reported case that we can find, is undeniably true. But to apply it to a case like the present, where the charge preferred, *ex natura rei,* as conclusively imports a negative of the exception, as if such negative had been in express terms, would violate the soundest principles of construction; and give to the rule an universality of operation which its terms do not import, and was never contemplated in the decisions or commentaries to which it owes its birth.   The true rule upon the subject is thus given by *Lord Mansfield,* in *Rex vs. Jarvis, Hil. Term,* 30, *Geo.* 2, reported in note, (*k*) in *King vs. Stone,* 1 *East.* 644, "where exceptions are in the enacting part of a law, it must appear in the charge, that the defendant does not

fall within any of them." And in *Spiers vs. Parker*, 1 *T. R.* 141, "the plaintiff must aver a case, which brings the defendant within the act." To sustain the doctrine contended for by the appellant—if a statute were passed, making "the malicious killing of cattle, except horses," a felony : and an indictment charged the malicious killing of a cow, it would be defective, unless it negatived the exception, by stating that the cow was not a horse. An allegation so useless, not to say absurd, cannot be required by any technicality either in civil or criminal pleading.

But it is urged by the counsel of the appellee, that the court cannot judicially know what a billiard table is, or that it is not the table at which the game of faro is usually played. To such a proposition we cannot yield our assent. We know of no recognized presumption either of law or fact, that imputes to the court an ignorance of a matter, like the present, of such notoriety as to be within the knowledge of the community at large. And we feel perfectly warranted in assuming to ourselves such a knowledge upon the subject, as enables us to declare that, in excepting billiard tables, the Legislature did not design to authorise their being kept for the playing thereon, of the game of faro for money; (the authority so to use them being a corollary of the doctrine contended for by the appellee,) but that the moment they are so appropriated, they, *ipso facto, pro hac vice*, lose the immunities conferred on them by the exception ; and cease to be billiard tables in the eye of the law. When, therefore, the charge in the indictment demonstrates, that the gaming table complained of could not be a billiard table, was it not superfluous to have added an allegation to that effect ?

The objection taken to the indictment, that it does not describe the offence with sufficient certainty and conformity to the language used in the act of Assembly, cannot be sustained. The offence is charged in the very words of the act of Assembly, by which it is created, with the additional words, " called a faro table," which detract nothing from the sufficiency of the description of the offence, otherwise set forth in the indictment. The

prohibition in the act of Assembly, is the keeping of a gaming table, at which the game of Pharo, Equality or any other game of chance shall be played for money.    The charge in the indictment is, that the accused "unlawfully did keep a certain gaming table, called a faro table, at which said gaming table, unlawfully as aforesaid, the game of faro was then and there unlawfully played for money."    The only difference between the language of the act and that of the indictment is, that in the latter it is alleged that the gaming table was called a faro table.    Such an allegation in no wise impairs the indictment, which is perfect without it; and even if it be not wholly rejected as surplusage, its only possible effect would be to impose upon the prosecution the necessity of proving, at the trial, that the gaming table complained of was called a faro table.    Totally unlike the present is the case of *Rex vs. Craven*, 1 *Russ. and Ryan*, 14, relied on in support of this objection. There the felony, created by the statute, was the stealing of a bank note, or promissory note, for the payment of money. The charge in the indictment was, the stealing of " a certain note commonly called a bank note."    And the court say, " that in the first special description of the property stolen, it being stated only to be a note, was not sufficient; the words of the act being bank note or promissory note for the payment of money.    And that the addition " commonly called a bank note," " did not aid such original wrong description."    In the case at bar, there was no original wrong description which required aid from the words that were added.    On the contrary, the indictment described with technical accuracy, in the very language of the act of Assembly, the offence committed, and such description was neither aided nor impaired by the additional words unnecessarily used.

The judgment of the county court is reversed and the cause remanded thereto.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**