COMMONWEALTH *vs.* WILLIAM H. JENNINGS.

Hampshire. Sept. 19. — Oct. 20, 1876. COLT & MORTON, JJ., absent.

When the enacting clause of a penal statute merely refers, without otherwise stating it, to an exception in a subsequent section, the exception need not be negatived in an indictment, unless necessary to a complete definition of the offence.

In an indictment on § 4 of the Gen. Sts. c. 165, which enacts that "whoever, having a former husband or wife living, marries another person, or continues to cohabit with such second husband or wife, in this State, shall (except in the cases mentioned in the following section) be deemed guilty of polygamy," the exception, stated in § 5, of a person whose husband or wife has been absent for seven years and not known to be living, need not be negatived.

On the trial of an indictment for polygamy, it appeared that the name of the defendant's first wife was spelled "Gigger" in the indictment and in the record of the marriage. A witness testified that her name was spelled "Jiger" or "Jigr," which he pronounced with the "g" hard. *Held,* that the question of misnomer was rightly submitted to the jury, and that they were warranted in finding that the initial letter had the soft sound, and the subsequent "g" or "gg" the hard sound.

INDICTMENT on the Gen. Sts. c. 165, § 4, alleging that " William H. Jennings, of Northampton, in the county of Hampshire aforesaid, on the eleventh day of January, A. D. 1866, at Amherst, in the said county of Hampshire, he, the said William H. Jennings, being then and there a single man unmarried, was lawfully married to one Augusta Gigger, and her, the said Augusta Gigger, then and there had and took for his the said William H. Jennings's lawful wife, and that afterwards, he, the said William H. Jennings, on the thirteenth day of November, A. D. 1875, at said Amherst, in the county aforesaid, did unlawfully marry and take to his wife one Hattie Johnson, he, the said William H. Jennings, being then and there married and the lawful husband of the said Augusta Gigger, she, the said Augusta Gigger, then being his former wife and then living, and he, the said William H. Jennings, never having been lawfully divorced from the said Augusta Gigger ; and that the said William H. Jennings afterwards did cohabit and continue to cohabit with the

said Hattis Johnson, his second wife, in this State, to wit, at Northampton, in said county of Hampshire, for a long space of time, to wit, for the space of six months. Whereby, and by force of the statute in such case made and provided, he, the said William H. Jennings, is deemed guilty of the crime of polygamy. And so the jurors aforesaid, on their oath aforesaid, present that said William H. Jennings, in manner and form aforesaid, at Amherst, in the county of Hampshire, on the thirteenth day of November, now last past, did commit the crime of polygamy; against the peace of the Commonwealth aforesaid and the form of the statute in such case made and provided."

In the Superior Court, before the jury were empanelled, the defendant filed a motion to quash the indictment on the following ground : " Because it is not alleged in said indictment that the said Augusta Gigger, at the time of said second marriage, had not been continually remaining beyond the sea, and had not voluntarily withdrawn from the said William H. Jennings, and remained absent for the space of seven years together."

*Allen*, J., overruled the motion, and the defendant was then tried. The government put in evidence a certified copy of the record of the defendant's first marriage on January 11, 1866, in which the bride's name was stated to be " Augusta Gigger."

A witness, one Thompson, testified that the former wife's name was spelled " Jiger " or " Jigr. " The defendant testified that her name was spelled " Jiger ; " and that the name was pronounced giving the " g " the soft sound, and not the hard sound given to the " gg " as pronounced by other persons who read the indictment or the copies of the records. There was no evidence as to how it was usually pronounced, or how it was spelled, other than as above given, except that the witness Thompson pronounced it, giving the first letter the soft sound and the double letter the hard sound of " g."

The defendant asked the judge to rule that the defendant could not be convicted upon the evidence as to the name of the former wife. The defendant also asked the judge to rule that, on the evidence, the jury could not find that the name of the first wife was the same in sound as the name set out in the in dictment ; that the sound, in order that a different spelling might suffice, must be the same when correctly pronounced.

The judge declined so to rule, but ruled that the defendant could only be convicted upon evidence showing that the former wife's name was usually pronounced as set out in the indictment. The jury returned a verdict of guilty; and the defendant alleged exceptions.

*D. W. Bond,* for the defendant.

*C. R. Train,* Attorney General, for the Commonwealth.

GRAY, C. J.   This indictment is upon the Gen. Sts. *c.* 165, § 4, enacting that "whoever, having a former husband or wife living, marries another person, or continues to cohabit with such second husband or wife, in this State, shall (except in the cases mentioned in the following section) be deemed guilty of polygamy, and be punished" by fine or imprisonment.   Section 5 declares that "the provision of the preceding section shall not extend to any person whose husband or wife has been continually remaining beyond sea, or has voluntarily withdrawn from the other and remained absent for the space of seven years together, the party marrying again not knowing the other to be living within that time, nor to any person legally divorced from the bonds of matrimony and not the guilty cause of such divorce."

The indictment avers that, at the time of the second marriage, the first wife was still living, and the husband had not been divorced from her.   But it does not negative the other provision of § 5; and the question raised by the motion to quash is, whether the indictment is for that reason defective.

It is a general rule of pleading, that when an exception or proviso is embodied in the clause which defines the offence, or, as it is commonly called, the enacting clause, it must be negatived in the indictment; but that if it is only found in a subsequent distinct clause of the same or another statute, it need not be so negatived.   *Commonwealth* v. *Maxwell,* 2 Pick. 139.   *Commonwealth* v. *Hart,* 11 Cush. 130.   *Commonwealth* v. *Sheffield,* 11 Cush. 178.

The learned counsel for the defendant contends that in the middle class of cases, where the exception is not in express words introduced into the general or enacting clause, but only by reference to a subsequent clause, by the words "as hereinafter mentioned," or the like, the rule requires that all the circumstances

of exemption and modification, whether applying to the offence or to the person, stated in the subsequent clause, should be distinctly negatived, because they must be deemed to be incorporated in the enacting clause, according to the maxim, *verba relata inesse videntur.* This position appears to be supported by opinions of Lord Tenterden and of Mr. Justice Metcalf, both names of weight upon a question of this kind. *Steel* v. *Smith*, 1 B. & Ald. 94, 99, 100. *Vavasour* v. *Ormrod*, 9 D. & R. 597, 599; *S. C.* 6 B. & C. 430, 432. 8 Am. Jur. 241, 242. *Commonwealth* v. *Hart*, 11 Cush. 130, 137.

But the statement of Mr. Justice Metcalf in *Commonwealth* v. *Hart* was a mere repetition, in a case which did not call for its judicial consideration, of a proposition which he had laid down, while at the bar, in the American Jurist, *ubi supra*, and is inconsistent with the subsequent adjudication of this court, in which he concurred, in *Commonwealth* v. *Tuttle*, 12 Cush. 502.

In *Steel* v. *Smith*, the remark of Lord Tenterden (then Mr. Justice Abbott) was purely *obiter dictum*, and Mr. Justice Bayley, a most accurate judge, stated the rule thus : " Where there is an exception so incorporated with the enacting clause that the one cannot be read without the other, there the exception must be negatived." 1 B. & Ald. 99.

In *Vavasour* v. *Ormrod*, also, the general statement of Lord Tenterden went beyond what the case required. The action was debt for rent under a lease containing a covenant by the defendant to pay the rent sued for, " except as hereinafter mentioned," and also a covenant by the lessor to expend a certain sum in erecting a steam engine, and a provision that, if the lessee should within a certain time pay him the whole or part of that sum, the rent should be reduced as therein provided, which might perhaps be considered, as suggested by Mr. Justice Bayley during the argument, (9 D. & R. 599,) as amounting to neither an exception nor a proviso, but a qualification only, so that, by the terms of the reservation, the whole rent was to be payable only under particular circumstances.

The only other case, cited by Mr. Justice Metcalf in support of this position, is *The King* v. *Pratten*, 6 T. R. 559, which was as follows : By St. 1 Jac. I. *c.* 22, § 5, it was enacted that no person should tan any leather, or use the craft or mystery

of tanning of leather, except those having tan-houses already established, and the apprentices and families of tanners; and by § 7, that no person should buy any rough hides, "but only such person or persons as by this act may lawfully use the craft or mystery of tanning of leather." It was held that an information on § 7 must negative the exceptions stated in § 5. The weight of that decision as an adjudication is perhaps lessened by the fact that the counsel for the prosecution expressly yielded the point before it was sustained by the court. But that statute might well be considered to have been intended not to make all tanning of leather or buying of rough hides unlawful, but to limit the right of doing each to existing tanners, their apprentices and families, and therefore to make it essential to a complete definition of an offence, under either section, to allege that the defendant was not one of the privileged class for whose benefit the act was passed.

On the other hand, it appears to us to be established, by a great preponderance of authority, that, when an exception is not stated in the enacting clause otherwise than by merely referring to other provisions of the statute, it need not be negatived, unless necessary to a complete definition of the offence.

By St. 27 Eliz. *c.* 2, § 2, it was enacted that it should not be lawful for any Jesuit or other priest, born in England, and ordained or professed since the beginning of the reign by any authority derived from the See of Rome, to come into or remain in the realm after forty days from the end of the then session of Parliament, "other than in such special cases, and upon such special occasions only, and for such time only, as is expressed in this act," upon the penalty of being adjudged and punished for high treason. By subsequent sections, it was provided that the act should not extend to any who should, within a certain time specified, submit themselves and take the oath of supremacy, or who should be too ill to depart out of the realm. It was resolved by Chief Justice Popham and other judges, "that the better course was to omit this in the indictment, notwithstanding it be comprised in the body of the act, in the same manner as if it had been only in a proviso; in which case it is to the prisoner to help him by means of such a proviso, if he can do it; for the words 'other than,' &c., are but as referring to the provision

subsequent in the statute, in which case this matter shall be used but as the proviso itself shall be." *Southwell's case*, Pop. 93.

Under the St. of 22 Geo. III. *c.* 84, the enacting clause of which prohibited other persons than the scavenger from carrying away dust in a certain parish, "except in the places hereinafter mentioned," which were specified in subsequent sections of the act, it was held that, in an action for a violation of the statute, these exceptions need not be negatived. *Ward* v. *Bird*, 2 Chit. 582.

So in *Hart* v. *Cleis*, 8 Johns. 41, it was held that, in an action for a penalty under a section which prohibited the exportation of slaves, "except as hereinafter provided," the plaintiff need not negative the proviso of a succeeding section, which allowed persons travelling through or removing from the state to take their slaves with them.

Our own St. of 1852, *c.* 322, § 1, enacted that no person should be allowed to sell any spirituous or intoxicating liquors, "except as is hereinafter provided." Section 7 provided that if any person should sell any spirituous or intoxicating liquors, "in violation of the provisions of this act," he should be punished by fine or imprisonment. In prosecuting for this penalty, it was held to be unnecessary to negative the exceptions which were stated in subsequent sections of the statute. *Commonwealth* v. *Tuttle*, 12 Cush. 502. Like decisions were made in *Commonwealth* v. *Hill*, 5 Grat. 682, and in *State* v. *Miller*, 24 Conn. 522. See also *United States* v. *Cook*, 17 Wall. 168, 173–176.

In the case before us, the offence of polygamy is fully defined by the Gen. Sts. *c.* 165, § 4, as consisting in the defendant's, while having a former husband or wife living, marrying or continuing to cohabit with another person in this State. The words "except in the cases mentioned in the following section" are not so incorporated with the enacting clause that the one cannot be read without the other, but are inclosed in a parenthesis, inserted, after completing the enumeration of the elements necessary to constitute the crime, in the midst of the conclusion which declares its denomination. That the former husband or wife has been absent for seven years and unheard from is a matter of defence or excuse, rather than a limit of the definition of the crime.

The case appears to us to fall within what Mr. Justice Metcalf, in the closing paragraph of the opinion in *Commonwealth* v. *Hart,* above cited, called an elementary principle of pleading : " It is not necessary to allege matter which would come more properly from the other side ; that is, it is not necessary to anticipate the adverse party's answer, and forestall his defence or reply. It is only when the matter is such that the affirmation or denial of it is essential to the apparent or *primâ facie* right of the party pleading, that it must be affirmed or denied by him in the first instance." 11 Cush. 137.

Our conclusion is supported by well considered judgments of the highest courts of Vermont and New York, under enactments not distinguishable in their terms from the statutes now before us. *State* v. *Abbey,* 29 Vt. 60. *Fleming* v. *People,* 27 N. Y. 329.

It may also properly be noticed that these statutes substantially reënact the Rev. Sts. *c.* 130, §§ 2, 3, which, as the commissioners on those statutes said in their report, were intended to present the provisions of the former statute in a more compressed form, and with some change of language ; and that in the former statute the matters in question were not mentioned or referred to in the general or enacting clause, but were only added by way of proviso, so that in an indictment upon that statute it would have been clearly unnecessary to negative them. St. 1784, *c.* 40, § 2. *Murray* v. *The Queen,* 7 Q. B. 700. *State* v. *Norman,* 2 Dev. 222. It can hardly be believed that the Legislature, in condensing the statute, intended to complicate the form of the indictment.

The question of misnomer was rightly submitted to the jury, who were well warranted in finding that in the name of the first wife, as spelled in the indictment and in the record of her marriage, " Gigger," the initial letter had the soft sound which it commonly (though not universally) has before " i," and that the double letter had the usual hard sound ; and that a name, which the only witness, other than the defendant, pronounced in the same way, and testified was spelled either " Jiger " or " Jigr," was usually so pronounced. *Exceptions overruled.*