# WATERS HOWES

*vs.*

# STATE OF MARYLAND.

*Indictment—Negativing Exception in Statute—Intoxicating Liquors.*

While if an exception in a criminal statute is so incorporated with the substance of the clause defining the offense as to constitute a material part of the description of the acts, omission, or other ingredients which constitute the offense, an indictment under the statute must, expressly or by implication, negative the exception, this is not necessary if the words of the statute, defining the offense, are so entirely separable from the exception that all the ingredients constituting the offense may be accurately and clearly alleged without any reference to the exception.                                    pp. 535, 536

Whether the indictment must negative the exception in the statute is to be determined; not by whether the exception is contained in the enacting clause, but rather by whether it is so incorporated with the definition or description of the offense as to constitute a part thereof.                          pp. 536-539

When the facts are peculiarly within the knowledge of the accused, and the prosecuting officer or grand jury could not readily obtain the information, the burden is on the accused to prove that he is within an exception in the statute.      p. 543

An indictment, under Acts 1890, ch. 568, sec. 184A, prohibiting the sale of intoxicating liquors in the City of Annapolis, "except as hereinafter provided, but this shall not apply to sales made by a person under a provision of law or order or decree of a court of competent jurisdiction requiring him to sell personal property, or to sales of cider by the maker thereof not to be drunk on the premises," need not, after alleging unlawful sales in violation of the statute, negative the exceptions therein, introduced by the words "but this shall not apply to."                          pp. 541-543

Since one indicted for the unlawful sale of intoxicating liquors is, by Code, art. 27, sec. 504, enabled to obtain from the State's Attorney, before trial, a statement of the particular variety of liquor expected to be proved, he cannot complain that, by the failure of the indictment to negative an exception, in the statute, of sales of cider not to be drunk on the premises, he is placed at a disadvantage as regards the preparation of his defense, or as regards a second prosecution for the same offense.                                   pp. 546, 547

Generally speaking, a demurrer to an indictment does not reach a bill of particulars, and a bill of particulars does not cure a defect in an indictment, it being no part of the pleadings.
                                                             p. 547

*Decided June 23rd, 1922.*

Appeal from the Circuit Court for Anne Arundel County (Moss, J.).

Criminal proceeding against Waters Howes. From a judgment of conviction and sentence, said defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Jerry L. Smith* and *Ogle Marbury,* with whom were *Marbury & Perlman* on the brief, for the appellant.

The indictment was defective for failure to negative the exception in the statute. *State* v. *Price,* 12 G. & J. 262; *State* v. *Nutwell,* 1 Gill, 56; *Bode* v. *State,* 7 Gill, 326; *Rawlings* v. *State,* 2 Md. 211; *Kellenbeck,* 10 Md. 431; *Franklin* v. *State,* 12 Md. 236; *Barber* v. *State,* 50 Md. 161; *Stearns* v. *State,* 81 Md. 341; *Keefer* v. *State,* 87 Md. 562; *State* v. *Knowles,* 90 Md. 658; *State* v. *Long,* 94 Md. 639; *Parker* v. *State,* 99 Md. 201; *Watson* v. *State,* 105 Md. 653; *Weber* v. *State,* 116 Md. 410; *Ruggles* v. *State,* 120 Md. 559; *State* v. *Jenkins,* 124 Md. 381; *Kelly* v. *State,* 139 Md. 204.

*Alexander Armstrong, Attorney General,* with whom were *Lindsay C. Spencer, Assistant Attorney General,* and *James M. Munroe, State's Attorney for Anne Arundel County,* on the brief, for the State.

Boyd, C. J., delivered the opinion of the Court.

The appellant was convicted in the Circuit Court for Anne Arundel County for selling and offering for sale intoxicating liquors in violation of the provisions of chapter 568 of the Acts of 1890, and was sentenced to pay a fine of $600 and costs, and committed to the county jail of that county for three months. From that judgment he took an appeal to this Court. At the January Term thereof the case was heard, and the judgment was affirmed by a divided court. On the application of the appellant, a re-argument was ordered, and heard at this (April) term.

The indictment contained four counts, but a demurrer was sustained to the first and second and overruled as to the third and fourth. The traverser then pleaded not guilty, was convicted by a jury, and the case is before us for review on the demurrers to those two counts. As they present the same objections urged by the traverser, we need only quote from the third, which charges that Waters Howes on the 5th day of July, 1921, "at the county aforesaid, to wit, at the City of Annapolis, in said county, unlawfully did sell to John Elliott certain intoxicating liquors without first taking out a license authorizing him, the said Waters Howes, to sell intoxicating liquors at said City of Annapolis, in said county," beginning and concluding in the usual form.

The part of section 184 A of chapter 568 of the Acts of 1890, applicable to this case, provides that, "no person after the first day of May, eighteen hundred and ninety, shall sell, offer for sale or keep for sale in the City of Annapolis, any intoxicating liquors except as hereinafter provided, but this shall not apply to sales made by a person under a provision of law or order or decree of a court of competent jurisdiction requiring him to sell personal property, or

to sales of cider by the maker thereof not to be drunk on the premises." It then states what the term "intoxicating liquors," as used in that and the succeeding sections, shall be deemed to include. The indictment does not in either count negative the expression in the statute, "but this shall not apply to sales made," etc., and it is contended that such omission makes it fatally defective, and hence the demurrer should have been sustained to the third and fourth counts. The important question, therefore, is whether it was necessary to negative those two exceptions, as we will call them, or either of them.

1. It was contended by the appellant at the original argument, and emphasized at the re-argument, that it was no longer an open question in this State, great reliance being placed on the case of *Kiefer* v. *State,* 87 Md. 562, which was said to be conclusive. In that case we had before us section 653 P of chapter 343 of the Acts of 1890—that act adding a number of new sections to the Public Local Laws of Baltimore City, under the sub-title, "Liquor and Intoxicating Drinks," which for the most part are very similar to the provisions in the Annapolis statute. The section in the *Kiefer case* related to sales of liquor on Sunday by licensees.

It may be as well, in the beginning of our discussion, to say that we have no intention or desire to recede from the position taken in the case of *Kiefer* v. *State, supra,* and we are not unmindful of what we quoted in that case from *Stearns* v. *State,* 81 Md. 341, as the general rule on the subject, that "where a statute contains an exception so incorporated in its enacting clause, that the one cannot be read without the other, the indictment or information must nega-tive the exception, but when, after general words of prohibi-tion, an exception is created in a subsequent clause or section, it must be interposed by the accused as matter of defense." Mr. Justice Clifford remarked in *United States* v. *Cook,* 17 Wall. 176, that "commentators and judges have some-times been led into error by supposing that the words 'enact-

ing clause,' as frequently employed, mean the section of the statute defining the offense, as contradistinguished from a subsequent section in the same statute, which is a misapprehension of the term, as the only real question in the case is whether the exception is so incorporated with the substance of the clause defining the offense as to constitute a material part of the description of the acts, omission or other ingredients which constitute the offense." In that case, MR. JUSTICE CLIFFORD also said: "Text writers and courts of justice have sometimes said that if the exception is in the enacting clause, the party pleading must show that the accused is not within the exception, but where the exception is in a subsequent section or statute, that the matter contained in the exception is matter of defense and must be shown by the accused. Undoubtedly that rule will frequently hold good, and in many cases prove to be a safe guide in pleading, but it is clear that it is not a universal criterion, as the words of the statute defining the offense may be so entirely separable from the exception that all the ingredients constituting the offense may be accurately and clearly alleged without any reference to the exception."

There is nothing in our own decisions in conflict with what we have just quoted. In the *Kiefer case,* after referring to the general rule, we said: "The rule as thus announced is, however, not strictly accurate, as applicable to all cases, and sometimes may be misleading. The real question to be determined is whether the exception is descriptive of the offense or so incorporated in the clause creating it as to make it a part of it. The exception may be of such a character as that the facts are only within the knowledge of the accused, and not such as the prosecuting officer or the grand jury can readily obtain. In such case the burden would generally be on him to establish them, even if the exceptions were negatived in the indictment, but, on the other hand it is necessary that the accused be brought within the scope and meaning of the statute." In that case we used, as an illustration

of the latter statement, *Bode* v. *State,* 7 Gill, 362 (should
have been 326). There the prohibitory clause was within
the first section of the act, but the court determined that,
as that section provided that, for a second conviction, the
license of the person offending should be suppressed, and as
the second section made it the duty of the treasurer, or other
person whose duty it was to have the tavern licenses prepared,
to have inserted in said licenses the clause especially ex-
cepting the Sabbath day from the operation of such licenses,
the act was to be construed to refer only to licensed tavern
keepers. The Court said: "There were no exceptions to
be negatived by the indictment; and it was not a case of ex-
emption, to be interposed by the accused, as a matter of
defense." In *State* v. *Price,* 12 G. & J. 260, it was held,
quoting from the syllabus, that "where the enacting clause
of a penal act contains an exception, it is not indispensable
that an indictment framed under it should set forth *an express*
negation of it. Where the charge preferred *ex natura rei* as
conclusively imports a negation of the exception, as if such
negative had been in express terms, no rule of construction
requires more." The Court said, after referring to the con-
tention of the appellee in the case that if there be an exception
in the same clause which creates the offense, the indictment
must show, negatively, that the defendant or subject of the
indictment does not come within the exception: "In an-
nouncing such a principle, the court must be understood as
asserting it in reference to the cases then before it, and those
of a similar character."

The case of *Stearns* v. *State, supra,* clearly adopted the
principle we refer to. This Court did not reverse that case
because the exception had not been negatived, but by reason
of the information being defective for duplicity. Nor did
we intimate that the fact that the exception was separated
from the general words of prohibition by a semicolon, instead
of a comma, or commenced with the word "provided" instead
of "except," "except that," or something of that kind, in any

way affected our conclusion on that point, but on the contrary we recognized it as an "exception," although we also spoke of it as a "proviso," and based our decision on the ground that "the exception contained in the proviso of the statute is sufficiently negatived by the averment in the information itself." On page 344 of 81 Md., that is clearly stated by JUDGE BRISCOE. The information alleged that the offense was committed by gambling, making books and pools, etc., in Anne Arundel County, on races which took place at Sheepshead Bay race tracks in the State of New York. We held that that sufficiently negatived the exception in the statute, as to races held within the grounds of an agricultural association within this State.

. We refer to these cases at some length because we believe they materially reflect upon some points we will hereafter make in reference to the exceptions now being considered, and because we are inclined to believe that the general rule on the subject has been misleading, as we said in *Kiefer's case,* it sometimes may be. Some of the decisions, among the many we have examined, seem to go on the theory that in order to determine what is conclusive all that is necessary is to see where the "exception" or "proviso," if the term be preferred, is, and if it is in or near "the enacting clause" it is an exception, which must be negatived, but if it is further down the line it need not be. The above cases show this does not necessarily follow. It may be so situated and worded as to settle the question—as in the *Kiefer case* there can be no doubt where it belongs, while in such an one as *State* v. *Knowles,* 90 Md. 646, it is equally clear as to where it should be put. In such cases the general rule may be sufficient, without any or much discussion of it, but there are many cases which require closer and more careful consideration in order to determine where they belong. This is clearly pointed out in *State* v. *Abbey,* 29 Vt. 60, where it is said, "The question is whether the exception is so incorporated with, and becomes a part of the enactment, as to constitute a part of the defini-

tion or description of the offense; for it is immaterial whether the exception or proviso be contained in the enacting clause or section, or be introduced in a different manner. It is the nature of the exception, and not its location, which determines the question." That court also said that the question did not depend upon any distinction between the words, "provided" and "except," as they may be used in the statute. See also *State* v. *Connor,* 142 N. C. 700.

By reference to chapter 343 of the Acts of 1890, regulating the sale of intoxicating liquors in Baltimore City, it will be seen that section 653 A uses the same language in the beginning as the Annapolis act does, but after the expression "except as hereinafter provided," and just before, "but this act shall not apply to sales," etc., there is a semicolon, instead of a comma, which is in the Annapolis act. There might have been periods in both, so far as the meaning of the provision is concerned. The "general words of prohibition," as they are called in the rule quoted above from *Stearns* v. *State,* in this section are separated from the provision "but this does not apply to sales," etc., by the expression "except as hereinafter provided." That refers to the provisions for the obtention of licenses, the regulation of licenses, etc., which constitute fourteen sections of this statute. One of them (section 184 O) expressly provides that "druggists and apothecaries in said city shall not be required to obtain licenses under the provisions of this sub-title," but goes on to provide that they shall not sell intoxicating liquors except upon prescriptions of regular physicians, and has a number of regulations in reference to them. It is not pretended that it is necessary to negative the exception in favor of druggists and apothecaries, and the reason given for not doing so is simply because that is in a subsequent section, although, as we will show later, there were good reasons in reference to the sales following the expression, "but this shall not apply," etc., which do not exist in the case of druggists. There has been no explanation attempted as to why the Legislature

would intentionally make a distinction between the three classes, as the appellant contends it did by the positions in the statute, so that for sales under court orders and sales of cider, the exceptions must be negatived, but need not be for sales by druggists, and, so far as we can see, no valid explanation could be given.

2.   There are some decisions which hold that such a provision as "except as hereinafter provided" brings up to the enacting clause the exceptions to which it refers, although they are in subsequent clauses or sections of the statute.   The case of *Comm.* v. *Hart,* 11 Cush. 130, which is a leading one referred to by many courts and text writers, so decided, but that was overruled in regard to that question by *Comm.* v. *Jennings,* 121 Mass. 47, and it is not in accord with the weight of authority, although approved by some cases of high standing, such as *State* v. *Abbey,* 29 Vt. 60.   But that expression, following as it does immediately after the general words of prohibition, does mark a dividing line between those words and the exceptions presented by "but this shall not apply," etc., and it would not be easy to understand why the latter part of the general rule stated in *Stearns* v. *State, supra,* is not applicable—that "when after general words of prohibition, an exception is created in a subsequent clause or section, it must be interposed by the accused as a matter of defense."   Those two exceptions are in a *subsequent clause,* just as much as the provision as to druggists and apothecaries is in a subsequent section, and, with the risk of repeating what we have in substance already said, there can be no logical ground for requiring the exceptions relied on in this case to be negatived, when the one as to druggists, etc., is not so required—especially when we see that they are separated by a term which refers to fourteen sections of the statute, including the one as to druggists.   They are not interwoven with the words of prohibition, like the exception in the Baltimore statute on Sunday selling, before the court in *Kiefer's case,* was.   There we did not even have general words of pro-

hibition, prohibiting all persons, but only licensees, and the statute was equivalent to saying that *"no licensee* shall sell or furnish to any person intoxicating liquors on Sunday except a hotel keeper, who may supply them to his *bona fide* guests" in the ways therein stated. There was nothing between the words of prohibition and the exception, as there is in this statute, and the statute, after first saying "no licensee," made the exception, not merely in the same clause but in such way as to require it to be read with and as a part of the prohibitory clause. While here the statute says "but this shall not apply to" the sales designated, and clearly there is no hardship on the person making such sales, if he is required to show that they were such as the law authorized, instead of requiring the State to charge and prove a negative, as we think appellant was.

3. There was no occasion to make an exception as to sales made under a provision of law or order of court. In the first place, it is only necessary to read the subsequent sections of this statute to see that it could not reasonably be construed to apply to such sales. All licenses granted under that statute had to be issued so as to run until the first day of the following May, and the licensee had to pay for every month during which it was to run, one-twelfth of the annual charge. No one can read section 184 F, the one showing what the petition for license must contain, and fail to see that the provisions are not applicable to anyone selling under a provision of law or order of court. The applicant must, among other things, designate the particular place for which a license is desired, the name of the owner of the premises upon which *the business licensed is to be carried on;* it must be shown that *it is necessary for the accommodation of the public* that the place shall be licensed, and other matters are provided for which could not properly be applicable to such sales as we are considering. The licensee is required by section 184 I to give bond, and by section 184 J is required to pay amounts which in most cases would be prohibitory, where the

party is only to make such sales as are referred to in those exceptions. Of course the statute could not be construed to authorize any person to conduct a regular business, such as is contemplated by the statute, in order to sell under a provision of law or order of court requiring him to sell personal property. It could only mean such a person as a sheriff, constable, or other officer, or an executor, administrator, receiver or other fiduciary, or person selling under an order of court, but not to run a regular liquor business without license, or without the protection the statute was intended to give the public.

4. But beyond that, there was no reason for such exception. No one would contend that if, for example, an officer levied on a stock of liquors he would have to take out a license to sell it, or if one, who held such liquors legitimately, died, became involved in debt or failed in business, that his personal representative, or a receiver, trustee, or the person directed by a court of competent jurisdiction to sell, would have to get out a license to make such sales. The case of *Forwood* v. *State,* 49 Md. 531, in which the question was as to the right of a hotel keeper who had gone out of business to sell his stock of liquors, while not precisely in point, is very analagous to this one. Forwood was indicted for selling without license, and relied on the defense that he was simply selling out at cost, in amounts of not less than half a pint, his stock of liquors. The sale for which he was indicted was made in July after May 1, when his license expired, and the Court held that he was carrying on a regular business, and he was not protected by section 5 of article 56 of the Code, that licenses were only required in the prosecution of a regular business. The Court said, if a keeper of an ordinary, whose license had expired, gave up his business, he could without renewing his license, lawfully sell and dispose of his chattels, including his stock of liquors on hand and that "if the appellant had sold his stock of liquors at public auction, with his other chattels, we think it would not have been a breach of the law. Or if, failing in that, he had disposed of them at private sale, by wholesale and at one time in good

faith, solely for the purpose of closing his business, and not in the continued prosecution of his business, this would not have been in our judgment any infraction of the license laws." The same rule would doubtless apply in case of sales under a provision of law, or order of court of competent jurisdiction, and there was no occasion to make such an exception in the statute, even if the statute had not shown on its face that it could not be applicable. There was, therefore, no reason for negativing such sales, which clearly would have been unnecessary, if the statute had not been passed, and the general law as to sales of liquor was in force. We do not refer to the exception as to cider, in what we have just said, in paragraphs 3 and 4 of this opinion.

5. Again, it is well settled by the authorities that when the facts are peculiarly within the knowledge of the accused, and the prosecuting officer or grand jury could not readily obtain the information, the burden is on him to prove that he is within the exception. As seen above, *Kiefer's case* so stated, although the expression used there is, "that the facts are only within the knowledge," but the term generally used is "peculiarly," "specially" or something of the kind. In 15 *R. C. L.* 394, par. 159, it is said: "It may be stated as a general proposition of law that where the prosecution shows a sale of intoxicating liquor by the accused within the general prohibition of a statute this establishes a *prima facie* case, and the burden is then cast on him to show that the transaction was not in violation of the law because it satisfies a condition under which the sale of liquor has by statute been made lawful." See note to *Bell* v. *State,* 62 Tex. Crim. 242, as reported in *Ann. Cases,* 1913 C, beginning on page 626, for a very thorough discussion of the subject. Of course, we do not want to be understood as adopting what is said in all of the cases cited in that note, as there are a great many of them, and indeed the author has given the different views of courts which are in conflict on some questions. But the note begins with a statement which we have

quoted above from 15 *R. C. L.,* except it concludes "because
it falls within some of the provisos of the general statute."·
Some of the cases rely specially on the fact that the matters
relied on were peculiarly within the knowledge of the de-
fendants, and announce the rule as to them which we have
stated above.  See particularly those under the head of
"Proof of Sale for Permitted Purposes," on page 636 of
*Ann. Cas.* 1913 C—also see page 637; note on page 496 of 10
*Enc. Pl. and Pr.*

In *State* v. *Nicholson,* 67 Md. 1, one defense was that there
was no averment in the indictment that the alleged defaulting
collector of taxes still detained the money.  The statute under
which he was indicted required him to pay the amounts
collected within certain times named, and upon being con-
victed of a failure to do so he was liable to be imprisoned in
the penitentiary, not less than one year nor more than five
years, unless the amount for which he is a defaulter be sooner
paid."  JUDGE ROBINSON said: "This it was unnecessary to
charge, for the reason, that if the money had been paid before
or after the finding of the indictment, this was matter to be
set up by way of defense."  He quoted from 2 *Hawkins'
Pleas,* part 2, ch. 25, sec. 112, that "it is a good general rule
that every indictment must bring the defendant within all
the descriptions mentioned in the body of the act, except
they are such as carry with them the bare denial of a matter,
the affirmation whereof is a proper and rational plea for the
defendant."  The court said that the rule there laid down was
fully sustained in *Rex* v. *Baxter,* 5 Term Rep. 83; *Rex* v.
*Pollard,* 2 Lord Raymond, 1370, 2 Leonard, 5.  Those cases
are often referred to on the subject.  See also *Comm.* v. *Jen-
nings, supra; Comm.* v. *Hart,* 11 Cush. 137; *United States*
v. *Cook, supra.*

It cannot be denied that the traverser knew better than
anyone else whether there was a provision of law or order of
court requiring him to make the sales complained of.  The
prosecuting attorney and grand jury would have been com-

pelled to inquire of every orphans' court and circuit court in the State, as well as the courts of Baltimore City and the federal courts, in order to know whether such order had been passed, and even then, there might, under some circumstances, be a case in which a party in this State could sell personal property under an order of a court in another state. The traverser would also know whether if he sold cider he was the maker of it, or if it was sold not to be drunk on the premises. In many cases it would be very difficult, if not impossible, for the State to show that the defendant was not the maker of the cider.

6.   There can be no doubt that under the great weight of authority, including our own State, the burden was on the defendant to bring himself within the exceptions referred to.   The only remaining question would be as to whether it was still necessary for the State to allege the negative in the indictment.   As to that the authorities differ, but it seems to us that the case of *State* v. *Nicholson* goes very far to show that it was not necessary in this State, and, as it is not necessary to prove it, to allege it is a useless form.   The indictment could not be quashed because the exceptions were not negatived in it, as section 496 of article 27 provides that "no indictment or presentment for felony or misdemeanor shall be quashed, nor shall any judgment upon any indictment for any felony or misdemeanor, or upon any presentment, whether after verdict, by confession or otherwise, be stayed or reversed * * * for the want of the averment of any matter unnecessary to be proved."   If we concluded that the indictment ought to have negatived the exceptions, and therefore the judgment must be reversed, what a pitiable position the prosecution of the criminal law of this State would be put in, if this judgment was reversed and a new indictment was found, and at the second trial there was no evidence to show that the defendant had made the sales under a provision of law or order of court, or if the State did not claim that he sold cider of any kind.   In point of fact, the record shows

that the traverser was, on October 27, 1921, presented for selling gin and cognac to John Elliott and Charles Tucker, on or about July 5, 1921, and the indictment was found October 31. We think, for other reasons, outside of this one, the judgment must be affirmed, but if we did not think so, we would be very loath to reverse the judgment when there is nothing whatever before us to show that the defendant claimed to have acted under a provision of law or order of court in making the sales, or that the State or the defendant claimed that what was sold was cider of any kind or make, and we would not be inclined to do so. The case was tried before a jury, which convicted the appellant. The record does not show what the evidence was, as there is no exception in the record, but if there had been any evidence which showed that the defendant came within the exceptions, or either of them, it would doubtless have been acted on by the lower court, or in some way been brought before us, but there is nothing but the demurrer, without any claim that he was injured. Before leaving this branch of the opinion, we deem it proper to say that in our discussion of the subject we have not said anything about the Eighteenth Amendment to the Federal Constitution or the Act of Congress known as the Volstead Act. Whether any sales could now be validly made under any provision of law or by the order of any court, unless in carrying out the Act of Congress, might present another question, and be another reason for the supposed exceptions being considered of no avail, but we need not go into that question.

7. Another reason which is applicable to the alleged exception of sales of cider, is this: The indictment does not name the kind of liquor the State claims the defendant sold or had for sale. If it had named, say, gin, or cognac, which are in the presentment, there would have been no occasion for expressly negativing the sale of cider, as that would of itself have been a sufficient negative, as practically agreed upon by the authorities, including our own cases. *Stearns* v. *State, supra; State* v. *Price, supra,* and others which might be

cited.   Section 504 of article 27 of the Code provides that "in any indictment for the unlawful sale or disposition of spirituous or fermented liquors or lager beer, it shall not be necessary to specify the particular variety, provided the indictment sets forth an unlawful sale or disposition of intoxicating liquor, but the defendant, on application to the State's Attorney before trial, may obtain a statement of the particular variety of liquor expected to be proved."   That statute was held to be valid in *Kiefer's case.*   See p. 564 of 87 Md..

The indictment sets forth an *unlawful* sale and disposition of intoxicating liquor, and is within the very terms of the statute.   If the defendant wanted to, he could have ascertained the particular variety of intoxicating liquor he was charged with selling and keeping for sale, by demanding of the State's Attorney a statement of it.   We are aware that, generally speaking, a demurrer to an indictment does not reach a bill of particulars, and a bill of particulars does not ordinarily cure a defect in an indictment, because it is no part of the pleadings, but the argument that the defendant might be put in jeopardy the second time, and that he was entitled to have knowledge of a sale of cider, if the State claimed such was made, before the trial of the case, in order that he might prepare his defense, falls to the ground when we see how easy it was for him to get all the information that was necessary to enable him to make a defense, or to protect himself from a second prosecution.   The cases are not in harmony as to the effect of a bill of particulars, but as this indictment does allege an *unlawful* sale of intoxicating liquor, it was, under that statute under which a traverser can be fully protected, sufficient on the demurrer, so far as the cider is concerned.   It seems to us that any other conclusion would justly bring severe criticism upon the administration of the criminal law, if it be held that an indictment which has made the charge substantially in the language of the statute just quoted, is invalid for the reason given by the appellant, notwithstanding the additional protection offered the accused in giving him

the right to require a statement of the kind of liquor. It is not an ordinary bill of particulars.

8. The only other point we will make is that stated in 2 *Wharton, Cr. Proc.* (10th ed.), sec. 792, on page 1112, that "where an exception or proviso withdraws a case from the operation of the enacting clause of the statute, and which case would, but for such exception or proviso, be within the statute, it need not be negatived." That is not only so stated there, but in 1 *Wharton's Cr. Ev.* (10th ed), sec. 128, p. 350; *Joyce on Indict.*, sec. 390, p. 459, note 6; 22 *Cyc.* 346, and cases cited in note 48. See also *State* v. *Connor*, 142 N. C. 700, where the subject is thoroughly discussed, and reference is made to other authorities, including *Archbold's Criminal Practice; Kitchens* v. *State*, 116 Ga. 847; *State* v. *Abbey*, 29 Vt. 60; *State* v. *Kendig*, 133 Ia. 164; *Hale* v. *State*, 58 Ohio St. 687; *State* v. *Miller*, 24 Conn. 526; *State* v. *Paige*, 78 Vt. 286; 6 *Ann. Cas.* 725 and note.

We have gone very fully into the questions suggested and have found a great many decisions and a good deal of conflict on some points, but we can have no doubt as to our duty in the premises. In our opinion it was not necessary to negative these exceptions, as they were created in a subsequent clause after general words of prohibition, and hence they come under the second part of the general rule referred to above when properly interpreted. The exceptions in this case are wholly different from that in *Kiefer's case*, and the words of this statute defining the offense are entirely separable from the exceptions, which was not so in the statute before us in that case. Other reasons given above strengthen us in our conclusion, and satisfy us that the judgment should be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*

OFFUTT, J., dissenting.