## LINDA LEE ROOS v. STATE OF MARYLAND

[No. 684, September Term, 1979.]

*Decided February 13, 1980.*

The cause was argued before LISS, MACDANIEL and WEANT, JJ.

*Cynthia E. Young,* with whom was *P. Paul Cocoros* on the brief, for appellant.

*William H. Kenety, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *John Prevas, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Linda Lee Roos, appellant, was convicted in a bench trial in the Criminal Court of Baltimore of possession of a sawed-off shotgun in violation of Article 27, Section 481C of the Annotated Code of Maryland (1957, 1976 Repl. Vol., 1979 Cum. Supp.), which became effective July 1, 1976. Sentence

was imposed, and it is from this judgment that this appeal was filed.

Appellant raises only one issue:

> Did the trial court err in convicting appellant where the State failed to prove each and every element of the offense charged in that the State failed to prove that the sawed-off shotgun in appellant's possession was not registered with the Federal government?

Section 481C sets out certain definitions as to the meaning of "rifle," "short-barreled shotgun," "short-barreled rifle" and "shotgun." It lists exclusions for antique, inoperable, or non-weapon firearms which would otherwise fit the enumerated descriptions, and then provides in Section 481C (b) that, "A person may not possess a short-barreled rifle or short-barreled shotgun *unless the person has registered it with the United States government in accordance with United States statutes.*" The statute carries with it a penalty clause which includes a provision for a fine and/or imprisonment.

The facts in this case are undisputed. At trial, the State introduced testimony that the appellant possessed the gun at the time of her arrest and that she claimed possession of it at that time. The trial court called as its own witness a Ms. Buckley who testified that she had properly registered the gun at the time she purchased it; that she had given the unaltered shotgun to the appellant; and that the gun had been altered since the transfer of the gun to the appellant. It was stipulated that the barrel of the gun was shorter than the length designated by statute, although the overall length of the gun was greater than the prohibited overall length. On the basis of this evidence appellant was convicted.

The issue raised in this appeal is a novel one in Maryland and there are no prior Maryland appellate decisions pertaining to Section 481C to guide us in our determination. Both appellant and appellee suggest that a comparison of Article 27, Section 481C and Article 27, Section 36B (the handgun statute) will be useful in resolving the issue.

Appellant urges, however, that the two sections are substantially different in the approach taken to the prohibited acts embodied in each of the statutes. In the Maryland handgun statute, the separately designated exceptions included in the statute operate to relieve an accused of criminal responsibility for the proscribed acts contained in the provision. Appellant concedes that under the handgun statute the burden is upon the accused to prove himself as being within a particular exception. *Jordan v. State,* 24 Md. App. 267, 330 A.2d 496 (1975). Appellant contends, however, that under Section 481C the failure to register a sawed-off shotgun with the Federal government is the gravamen of the offense, and that under those circumstances the "burden of proof of non-registration" is upon the State.

Appellant, in support of her position, offers principally the case of *United States v. Collier,* 381 F.2d 616 (6th Cir. 1967), where the defendant was prosecuted under 26 U.S.C. 5841, 5851 (now 5861) and 5862 (1964) for possession of an unregistered sawed-off shotgun which was transferred to the defendant without the requisite registration. In that case, no certificate from the Secretary of the Treasury establishing non-registration was introduced. In the absence of such proof, an F.B.I. agent testified that the defendant had informed him that he sawed off the gun the night before the robbery during the course of which the defendant was apprehended. The Court rejected this evidence as insufficient to show a failure to register, holding that, "[w]hile this argument certainly has much common sense to commend it, on balance we believe that the National Firearms Act is drafted in technical language and that the burden is on the government to prove all the necessary elements of the crime. Lack of registration is one of these." *Id.* at 619. In effect, the Court mandated that the government produce a certificate of non-registration from the Custodian of the National Firearms Registration and Transfer Records in order to sustain a conviction.

Appellant also calls our attention to *United States v. Thompson,* 518 F.2d 534 (8th Cir. 1975) and *United States v.*

*Williams,* 446 F.2d 486 (5th Cir. 1971), each of which deals with the possession of a sawed-off shotgun. In each of these cases, the defendants were charged with possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. 5861 (1968) which provides: "It shall be unlawful for any person — (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record. . . ." Evidence was introduced in *Williams, supra,* in the form of an authenticated certificate from the Custodian of the National Firearms Registration and Transfer Records that the particular sawed-off shotgun was not registered to one of the defendants in this case or to anyone else. The Court held that this was sufficient proof of non-registration to sustain the conviction of the other defendant. In *Thompson, supra,* a certificate stating that the gun was unregistered was also considered an essential element of the conviction.

The State agrees that if we accept *Collier* and the other Federal cases cited by the appellant as being binding upon us, it would be dispositive of this case and would require a reversal of appellant's conviction. Appellee points out, however, that we are not necessarily bound by the rulings of the Federal courts on this issue and suggests that we follow the ruling of our own Court of Appeals in an analogous case involving an interpretation of the Maryland handgun statute.

In *Mackall v. State,* 283 Md. 100, 387 A.2d 762 (1978), the Court of Appeals had before it Section 36 which declared it a misdemeanor for one to carry any dangerous and deadly weapon with the intent and purpose of injuring any person in any unlawful manner. The statute listed seven weapons which were designated as dangerous and deadly weapons *per se.* The statute further provided that "penknives without a switchblade and handguns" were without the ambit of the statute. The statute then stated that it did not apply to certain persons entitled to carry a proscribed weapon as a part of their official equipment, nor did it apply to a person who had been issued a permit to carry such a weapon, or who shall carry such weapon as a reasonable precaution against apprehended danger. The question before the Court was

whether the appellant bore the burden of proving that the weapon involved was one not prohibited by the statute, or that the appellant was included in the enumerated exceptions. The ultimate question posed by the case was whether the State had to establish beyond a reasonable doubt that the knife Mackall was found to have carried with the deliberate purpose of injuring the victim was a dirk knife, a bowie knife, a switchblade knife or any other dangerous and deadly weapon other than "a penknife without switchblade." The Court said, in citing *Howes v. State,* 141 Md. 532, 119 A. 297 (1922) as authority for its conclusions:

> The teachings contained in the comprehensive discussion in *Howes* may be fairly summarized thus: when a penal act contains an exception so incorporated with the substance of the clause defining the offense as to constitute a material part of the description of the acts, omission or other ingredients which constitute the offense, the burden is on the State to prove beyond a reasonable doubt, that the offense charged is not within the exception. In other words, when an exception is descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the offense, the State must negate the exception to prove its case. But, when an exception is not descriptive of the offense or so incorporated in the clause creating it as to make the exception a part of the offense, the exception must be interposed by the accused as an affirmative defense. *Howes* at 535-548. Of course, the burden of proving the corpus delicti and criminal agency is always on the State, and once the exception is interposed by the defendant, the burden remains on the State to show that it is not applicable. [283 Md. at 110-11.]

With regard to the sawed-off shotgun statute, we note that the Legislature, in creating the criminal violation of the law which is encompassed by Section 481C, made it a crime to possess the specifically described weapon defined in the

statute *only under circumstances where the person who possessed it had not registered it* with the United States government in accordance with the United States statutes. The State is therefore under an obligation to prove beyond a reasonable doubt: (1) possession; (2) of a gun with a barrel shorter than the statutory minimum; (3) and a failure to register the gun in accordance with the United States statutes. The non-registration of a sawed-off shotgun is a necessary element of the crime created under Section 481C, and the State must prove the failure to register in order to carry its burden of proof beyond a reasonable doubt of every element of the offense. This the State has failed to do.

The evidence in this case was insufficient to sustain the trial court's verdict of guilty and the conviction must therefore be reversed.

> *Judgment reversed, costs to be paid by Mayor and City Council of Baltimore.*